SQUIRE, SANDERS & DEMPSEY, L.L.P., APPELLANT, *v.* GIVAUDAN FLAVORS

CORPORATION, APPELLEE.

[Cite as *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*,

127 Ohio St.3d 161, 2010-Ohio-4469.]

*Evidence — Discovery — Attorney-client privilege — R.C. 2317.02(A) — Self-*
*protection exception to privilege permits attorney to testify concerning*
*attorney-client communications when necessary to establish claim for*
*attorney fees or to defend against charge of malpractice or other*
*wrongdoing — Attorney work-product doctrine — Attorney work product*
*may be discovered if it is directly at issue, if need is compelling, and if*
*evidence cannot be obtained elsewhere.*

(No. 2009-1321 — Submitted April 21, 2010 — Decided September 28, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 92366, 2009-Ohio-2490.

_____

SYLLABUS OF THE COURT

1. Ohio recognizes the common-law self-protection exception to the attorney-client privilege, which permits an attorney to testify concerning attorney-client communications where necessary to establish a claim for legal fees on behalf of the attorney or to defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client.

2. Attorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere.

_____

**O'DONNELL, J.**

{¶ 1} Squire, Sanders & Dempsey, L.L.P., appeals from a judgment of the Eighth District Court of Appeals reversing a discovery order that had compelled Givaudan Flavors Corporation to produce documents related to Squire Sanders' representation of Givaudan and that had directed Givaudan's former and current general counsel to testify regarding attorney-client communications in connection with litigation over the amount of Squire Sanders' legal fees and the adequacy of the legal services it rendered.

{¶ 2} The issue in this case is whether the common-law self-protection exception to the attorney-client privilege, permitting an attorney to reveal attorney-client communications when necessary to establish a claim or defense on the behalf of the attorney, applies as an exception to R.C. 2317.02(A), which provides that an attorney "shall not testify * * * concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client."

{¶ 3} Ohio recognizes other common-law exceptions to the attorney-client privilege. For example, as detailed below, Ohio recognizes the crime-fraud exception to prevent concealment of attorney or client wrongdoing. Similarly, in this case, recognition of the common-law self-protection exception to the attorney-client privilege as part of Ohio law aids the administration of justice and is supported by decisions of other jurisdictions addressing this issue.

{¶ 4} Pursuant to the common-law self-protection exception to the attorney-client privilege, an attorney should be permitted to testify concerning attorney-client communications where necessary to collect a legal fee or to defend against a charge of malpractice or other wrongdoing in litigation against a client or former client. Ohio recognizes this exception. As a result, we reverse the judgment of the court of appeals and remand the cause for further proceedings consistent with this opinion.

**Facts and Procedural History**

**{¶ 5}** In 2003, the law firm of Squire, Sanders & Dempsey, L.L.P., began to represent Givaudan Flavors Corporation in connection with litigation filed by employees and others who allegedly became ill after inhaling the butter flavoring that Givaudan produced for use on popcorn. At that time, Frederick King, then Givaudan's vice president for legal affairs, selected Squire Sanders to handle the litigation and generally approved payment of invoices submitted by the firm.

**{¶ 6}** In January 2007, Givaudan replaced King with Jane Garfinkel, naming her senior vice president and general counsel. She determined that the litigation attorneys defending the "butter flavor" litigation lacked sufficient qualification, experience, or expertise in pulmonary toxic tort litigation, and she thought that Squire Sanders had inadequately handled the defense, prolonging the litigation and generating excessive legal fees. Her deposition testimony revealed that she decided not to submit Squire Sanders' invoices for payment out of her concern that they showed a pattern of dishonesty, inaccuracy, and incompleteness. In May 2007, she terminated Squire Sanders without paying any of the outstanding invoices for legal services rendered by Squire Sanders.

**{¶ 7}** Squire Sanders filed this action for breach of contract and money due on account, alleging that Givaudan owed $1,801,204.37 in legal fees as a result of work it had performed up to the date of its termination. Givaudan denied liability and counterclaimed for breach of contract, legal malpractice, breach of fiduciary duty, fraud, and unjust enrichment. It asserted that Squire Sanders had charged unreasonable, excessive, and unnecessary legal fees while failing to provide competent and adequate legal services.

**{¶ 8}** Through discovery, Squire Sanders sought production of documents related to its representation of Givaudan, including its budgeting and staffing of the litigation, trial strategy, handling of witnesses, and Givaudan's

allegation that it failed to pursue opportunities for settlement; it also requested documents concerning Givaudan's decision to terminate its representation. Givaudan objected, asserting that the law firm sought documents protected by the attorney-client privilege and the work-product doctrine.

{¶ 9} Further, when Squire Sanders deposed King and Garfinkel, Givaudan asserted attorney-client privilege and the work-product doctrine to prevent either King or Garfinkel from answering questions. Givaudan objected when counsel for Squire Sanders asked King about the firm's staffing of the case, the resources the firm committed to the litigation, the strategy it pursued in defending Givaudan, and the adequacy of the firm's trial preparation. Givaudan similarly asserted attorney-client privilege to prohibit Garfinkel from answering questions about how she had formed her view that the Squire Sanders litigation team lacked qualified leadership and experienced attorneys, that it had inadequately prepared for trial and performed unauthorized work, and that Givaudan should retain different outside counsel. Givaudan further invoked the attorney-client privilege and the work-product doctrine to prevent Squire Sanders from having an independent expert review its billing invoices and other documents in its effort to establish the reasonable value of the legal services it rendered to Givaudan.

{¶ 10} Squire Sanders moved to compel the production of documents and testimony from both King and Garfinkel, relying on the self-protection exception to the attorney-client privilege and the work-product doctrine. The trial court granted the motion, compelling Givaudan to produce the documents that Squire Sanders had requested and directing King and Garfinkel to answer questions related to the Givaudan/Squire Sanders relationship. The court also permitted Squire Sanders to use documents already in its possession relative to the billing dispute.

4

{¶ 11} Givaudan appealed the trial court's discovery order to the Eighth District Court of Appeals. The appellate court reversed the trial court, holding that R.C. 2317.02(A) provides the exclusive means for a client to waive the attorney-client privilege for *testimonial* statements and that the implied waiver test articulated in *Hearn v. Rhay* (E.D.Wash.1975), 68 F.R.D. 574, applies to *nontestimonial* statements. The appellate court concluded that the trial court should not have granted the motion to compel without conducting an evidentiary hearing or an in camera review to determine whether the attorney-client privilege or the work-product doctrine applied and whether Givaudan had expressly or impliedly waived either or both. *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, Cuyahoga App. No. 92366, 2009-Ohio-2490.

{¶ 12} Squire Sanders appealed that decision to this court, contending that the common-law self-protection exception to the attorney-client privilege is recognized both in American jurisprudence and in Ohio law and is incorporated into the attorney-client privilege codified in R.C. 2317.02(A). According to Squire Sanders, when the exception applies, there is no privilege for the client to assert or waive, and the "good cause" requirement for obtaining attorney work product is satisfied. It also contends that the court of appeals erred in relying on cases dealing with waiver of the attorney-client privilege, which would be relevant only if no exception applied. And it further asserts that the trial court correctly concluded that the communications it sought fell outside the attorney-client privilege and the work-product doctrine.

{¶ 13} By contrast, Givaudan argues that the attorney-client privilege provided in R.C. 2317.02(A) is unambiguous and does not create an exception for attorney self-protection. It notes that this court has consistently rejected judicially created waivers, exceptions, and limitations of statutorily created testimonial privileges. Further, Givaudan maintains that R.C. 2317.02(A) could not have incorporated the common-law self-protection exception because this court never

recognized it at common law and has reversed the only Ohio appellate court cited by Squire Sanders to do so, *Keck v. Bode* (1902), 13 Ohio C.D. 413, 1902 WL 868, reversed without opinion by *Bode v. Keck* (1903), 69 Ohio St. 549, 70 N.E. 1115. In the alternative, Givaudan urges the court to uphold the Eighth District's decision to remand the case to the trial court for a hearing or in camera review of the disputed evidence to determine whether it actually falls within the self-protection exception.

{¶ 14} Separately, Givaudan in its argument requests this court to stay the fee-dispute lawsuit until the butter-flavoring litigation has concluded, because revealing its confidences would jeopardize its defense in that case. However, the court of appeals upheld the trial court's denial of a stay on the grounds that the denial was not a final appealable order and that the trial court's order did not constitute an abuse of discretion. Givaudan did not cross-appeal to challenge the court of appeals' decision in this regard and therefore this issue is not before us for review. See *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 14; *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 34, 65 O.O.2d 129, 303 N.E.2d 81.

{¶ 15} Thus, the central issue in this case is whether Ohio recognizes the self-protection exception to the attorney-client privilege permitting an attorney to testify concerning attorney-client communications to establish a claim or defense on behalf of the attorney in connection with litigation against a client or a former client.

### The Attorney-Client Privilege

{¶ 16} "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States* (1998), 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379. As we explained in *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, " 'Its purpose is to encourage full and frank

communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.' *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584; *Cargotec, Inc. v. Westchester Fire Ins. Co.,* 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 7. '[B]y protecting client communications designed to obtain legal advice or assistance, the client will be more candid and will disclose all relevant information to his attorney, even potentially damaging and embarrassing facts.' (Footnote omitted.) 1 Rice, Attorney-Client Privilege in the United States (2d Ed.1999) 14-15, Section 2.3." *Leslie* at ¶ 20.

{¶ 17} Evid.R. 501 provides that "[t]he privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience." Thus, "[i]n Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *Leslie*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18.

### Codification of the Privilege

{¶ 18} In *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, the court stated, "R.C. 2317.02(A) provides a testimonial privilege — i.e., it prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. A testimonial privilege applies not only to prohibit testimony at trial, but also to protect the sought-after communications during the discovery process." Id. at ¶ 7, fn. 1.

{¶ 19} Central to the issue in this case is R.C. 2317.02(A):

{¶ 20} "The following persons shall not testify in certain respects:

**{¶ 21}** "(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

**{¶ 22}** "* * *

**{¶ 23}** "(2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima facie showing of bad faith, fraud, or criminal misconduct by the client."

### Exceptions to the Attorney-Client Privilege

**{¶ 24}** We have previously recognized several exceptions to the attorney-client privilege codified by R.C. 2317.02(A) notwithstanding their absence from the statutory text.

*Cooperation with Wrongdoing (Crime-Fraud) Exception*

**{¶ 25}** In *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 266, 6 OBR 324, 452 N.E.2d 1304, the court explained that the attorney-client privilege may not be asserted to conceal the attorney's cooperation with the client's wrongdoing. In that case, Bobby Lee Nash Sr. and Tammy L. Lemley relinquished their infant child to two attorneys to facilitate the private placement of the child for adoption with an unidentified prospective adoptive parent. However, Nash and Lemley

changed their minds and sought the return of the child, but the attorneys refused to assist them. Lemley then filed a complaint in the trial court seeking the writ of habeas corpus on behalf of the child. At a hearing, the attorneys invoked the attorney-client privilege and refused to reveal the name and address of the person or persons who had the child. The trial court issued the writ, commanding the attorneys to either return the child or reveal his location, and the court of appeals affirmed. On the attorneys' appeal, this court affirmed, holding that the names and addresses of the attorneys' alleged clients were not entitled to the cloak of protection afforded by the attorney-client privilege.

{¶ 26} Writing for the court, Justice Resnick explained that "[t]he record * * * is abundantly clear that the private, independent, and surreptitious placement of the minor child in the instant case was only accomplished through a total derogation of the law." Id. at 259. After acknowledging that the General Assembly had codified the common-law attorney-client privilege in R.C. 2317.02, the court noted that "the attorney-client privilege only exists to aid in the administration of justice." Id at 264. Therefore, the court, adopting the reasoning of the court in *Tierney v. Flower* (1969), 32 A.D.2d 392, 302 N.Y.S.2d 640, stated: " 'The seal of secrecy between attorney and client is to be preserved "in the aid of a public purpose to expose wrongdoing and not * * * to conceal wrongdoing." * * * "[T]he veil [of privilege is removed] from the client's name when the attorney's assertion of a privilege is a cover for cooperation in wrongdoing." ' " (Brackets and ellipses sic.) *Lemley* at 266, quoting *Tierney* at 395-396 and *Matter of Kaplan (Blumenfeld)* (1960), 8 N.Y.2d 214, 218, 203 N.Y.S.2d 836, 168 N.E.2d 660. The court therefore held that the attorney-client privilege did not protect the names and addresses of the prospective adoptive parents and affirmed the issuance of the writ against the attorneys.

{¶ 27} In *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, we relied on *Lemley* in recognizing the crime-fraud exception as a

part of the common law of Ohio. There, we stated that "it is beyond contradiction that the privilege does not attach in a situation where the advice sought by the client and conveyed by the attorney relates to some future unlawful or fraudulent transaction. Advice sought and rendered in this regard is not worthy of protection, and the principles upon which the attorney-client privilege is founded do not dictate otherwise." Id. at 661.

{¶ 28} We again discussed the crime-fraud exception in *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 383, 700 N.E.2d 12, in which we confronted the question of whether a public-records request could be refused on the basis that the attorney-client privilege protected communications between the Cleveland Law Department and city officials allegedly engaged in a conspiracy to wrongfully indict John H. Nix for fraud. There, the case required consideration of whether an exception to the attorney-client privilege applied. We recognized that "[a] communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud." Id. at 383. However, we explained that "[a] party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud." Id. at 384. We held that Nix had failed to satisfy that burden. Id.

*Lack-of-Good-Faith Exception*

{¶ 29} The court discussed a second type of exception to the attorney-client privilege in *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 635 N.E.2d 331. In that case, Margaret Moskovitz died after her physician, who had altered records to conceal his malpractice, failed to timely diagnose a malignant tumor in her leg. Her estate sued her medical providers for medical malpractice. The court of appeals upheld the finding of liability against the physician and the denial of prejudgment interest but reversed the award of compensatory damages

as excessive and the award of punitive damages as prohibited entirely. On the estate's appeal to this court, we considered, among other issues, whether the medical providers had failed to make a good-faith effort to settle the claim such that prejudgment interest should have been allowed pursuant to R.C. 1343.03. Resolving that question turned on the applicability of the attorney-client privilege to "statements, memoranda, documents, etc. generated in an attorney-client relationship tending to establish the failure of a party or an insurer to make a good faith effort to settle a case contrary to the purposes of R.C. 1343.03(C)." Id. at 661.

{¶ 30} Because the attorney-client privilege does not apply when the client seeks to abuse the attorney-client relationship, the court in *Moskovitz* held that "[d]ocuments and other things showing the lack of a good faith effort to settle by a party or the attorneys acting on his or her behalf are wholly unworthy of the protections afforded by any claimed privilege," id. at 661, and that "[i]n an R.C. 1343.03(C) proceeding for prejudgment interest, neither the attorney-client privilege nor the so-called work product exception precludes discovery of an insurer's claims file. The only privileged matters contained in the file are those that go directly to the theory of defense of the underlying case in which the decision or verdict has been rendered." Id. at paragraph three of the syllabus.

{¶ 31} In *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 212, 744 N.E.2d 154, the court extended the exception recognized in *Moskovitz* to attorney-client communications furthering an insurance company's lack of good faith in denying coverage, holding such communications to be "unworthy of protection" by the attorney-client privilege. We explained that "the rationale behind our holding in *Moskovitz* is applicable to actions alleging bad faith denial of coverage. That is, claims file materials that show an insurer's lack of good faith in denying coverage are unworthy of protection." Id. at 213. However, the court, defining the scope of that exception, explained that "the only attorney-

client and work-product documents that would contain information related to the bad faith claim, and, thus, be unworthy of protection, would have been created prior to the denial of coverage."  Id.

*Joint-Representation Exception*

**{¶ 32}** In addition, Ohio courts have applied the common-law joint-representation exception to the attorney-client privilege, which provides that a client of an attorney cannot invoke the privilege in litigation against a co-client. See, e.g., *Emley v. Selepchak* (1945), 76 Ohio App. 257, 262, 31 O.O. 558, 63 N.E.2d 919, quoting 8 Wigmore on Evidence (3d Ed.1940), Section 2312 ("Another exception * * * is 'when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other * * *.' " [Emphasis sic]); *Netzley v. Nationwide Mut. Ins. Co.* (1971), 34 Ohio App.2d 65, 78, 63 O.O.2d 127, 296 N.E.2d 550 (following *Emley*); see also Weissenberger's Ohio Evidence Treatise (2009) 246-247, Section 501.8 ("A similar exception applies when an action arises between parties who were previously co-clients within an attorney-client relationship").

**{¶ 33}** Although the crime-fraud, lack-of-good-faith, and joint-representation exceptions to the attorney-client privilege are not expressly codified in R.C. 2317.02(A), they nonetheless "exist within the body of common-law principles governing privilege."  Weissenberger's Ohio Evidence at 246 (noting the crime-fraud, fee-dispute, malpractice, and co-client exceptions); see also 1 Giannelli & Snyder, Evidence (2d Ed.2001) 342, Section 501.14 ("Although the statute is silent, there are several well-recognized exceptions to the attorney-client privilege").  These exceptions define the scope of the protections afforded to attorney-client communications by R.C. 2317.02(A), because, as the

court explained in *Moskovitz*, "the privilege does not attach" when an exception applies. 69 Ohio St.3d at 661, 635 N.E.2d 331.

*The Self-Protection Exception*

{¶ 34} At common-law, "[a]n exception to the attorney-client privilege permits an attorney to reveal otherwise protected confidences when necessary to protect his own interest." Levine, Self-Interest or Self-Defense: Lawyer Disregard of the Attorney-Client Privilege for Profit and Protection (1977), 5 Hofstra L.Rev. 783. This exception provides that "when an attorney becomes involved in a legal controversy with a client or former client, the attorney may reveal any confidences necessary to defend himself or herself or to vindicate his or her rights with regard to the disputed issues." 1 Stone & Taylor, Testimonial Privileges (2d Ed.1995) 1-177, Section 1.66. See also *Mitchell v. Bromberger* (1866), 2 Nev. 345; 1 McCormick on Evidence (6th Ed.2006) 414, Section 91.1.

{¶ 35} The self-protection exception dates back over 150 years to its articulation by Justice Selden in *Rochester City Bank v. Suydam, Sage & Co.* (N.Y.Sup.Ct.1851), 5 How. Pr. 254, 262. There he wrote "Where the attorney or counsel has *an interest in the facts communicated* to him, and when their disclosure becomes necessary *to protect his own personal rights*, he must of necessity and in reason be *exempted* from the obligation of secresy [sic]." (Emphasis added in part.)

{¶ 36} Since that time, this exception has become firmly rooted in American jurisprudence. The Supreme Court of the United States recognized it in 1888 in *Hunt v. Blackburn* (1888), 128 U.S. 464, 470-471, 9 S.Ct. 125, 32 L.Ed. 488, and courts and commentators have accepted the self-protection exception as black-letter law defining which communications are subject to the attorney-client privilege. See generally Levine, 5 Hofstra L.Rev. 783; see also *Nave v. Baird* (1859), 12 Ind. 318; *Mitchell v. Bromberger*, 2 Nev. 345; *Koeber v. Somers* (1901), 108 Wis. 497, 84 N.W. 991, 994; 8 Wigmore on Evidence (McNaughton

Rev.Ed.1961) 607-608, Section 2312; 2 Mechem, Treatise on the Law of Agency (2d Ed.1914) 1900, Section 2313; 1 McCormick on Evidence at 414, Section 91.1; Wolfram, Modern Legal Ethics (1986) 307, Section 6.7.8; 3 Weinstein's Federal Evidence (2d Ed.2007) 503-101, Section 503.33; Sedler & Simeone, The Realities of Attorney-Client Confidences (1963), 24 Ohio St.L.J. 1, 53; Restatement (Third) of the Law Governing Lawyers (2000), Section 83.

{¶ 37} Notably, Ohio courts, including this court, have recognized the self-protection exception. In *Estate of Butler* (App.1939), 32 Ohio Law Abs. 1, 1939 WL 3319, the beneficiaries of the estate of Henry V. Butler challenged the administrator's payment of legal fees to Butler's attorney, Grover C. Brown. The probate court struck Brown's testimony regarding the services he had rendered to Butler as privileged pursuant to G.C. 11494, the predecessor to R.C. 2317.02(A). The court of appeals reversed, holding that "an attorney in matters pertaining to his interest has a right to testify and is not precluded from doing so by virtue of [G.C.] 11494 * * *. The rule is very broad which permits testimony of an attorney in support of his claim for fees." Id. at *15.

{¶ 38} We affirmed that decision, explaining that "[s]ince the administrator was charged with maladministration in the allowance and payment of Brown's claim against the estate, the defense of the administrator was dependent upon establishing the correctness of the claim by showing the amount and value of the services which Brown had rendered to Butler. The administrator was certainly entitled to such evidence in his defense and was entitled to have Brown, necessarily a very important witness, testify on this subject." *In re Butler's Estate* (1940), 137 Ohio St. 96, 114, 17 O.O. 432, 28 N.E.2d 186.

{¶ 39} We noted that Brown had not been disqualified from testifying as a creditor because his claim against the estate had been paid, and we continued: "Nor should the testimony of Brown have been wholly excluded on the ground that he had been counsel and attorney for Butler. Brown was at least a competent

14

witness to testify to any matters upon which he did testify, relating to the services he had performed, to documentary evidence covering transactions handled for Butler, to communications made to him by Butler in the presence of third persons, and to other matters which are excepted from the operation of the exclusionary provisions of Section 11494, General Code." *In re Butler's Estate*, 137 Ohio St. at 114, 17 O.O. 432, 28 N.E.2d 186. Notably, when the General Assembly recodified G.C. 11494 at R.C. 2317.02, it did not supersede that holding.

{¶ 40} Thus, our caselaw recognizes that the attorney-client privilege does not prevent an attorney from testifying to the correctness, amount, and value of the legal services rendered to the client in an action calling those fees into question. *In re Butler's Estate*, 137 Ohio St. at 114, 28 N.E.2d 186; see also 1 Giannelli & Snyder, Evidence, at 342 ("The privilege also does not apply in an action by an attorney against the client for the collection of legal fees"); Weissenberger's Ohio Evidence at 246 ("Nor does privilege attach in actions between the attorney and client, as in a fee dispute").

{¶ 41} Further, the self-protection exception to the attorney-client privilege permitting the attorney to testify also applies when the client puts the representation at issue by charging the attorney with a breach of duty or other wrongdoing. Weissenberger's Ohio Evidence, id.; 1 Giannelli & Snyder, Evidence, at 342. Courts recognize that " '[t]he attorney-client privilege cannot at once be used as a shield and a sword.' " *In re Lott* (C.A.6, 2005), 424 F.3d 446, 454, quoting *United States v. Bilzerian* (C.A.2, 1991), 926 F.2d 1285, 1292. Thus, a client may not rely on attorney-client communications to establish a claim against the attorney while asserting the attorney-client privilege to prevent the attorney from rebutting that claim.

{¶ 42} Rather, "the attorney-client privilege exists to aid in the administration of justice and must yield in circumstances where justice so requires," *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d at 661, 635 N.E.2d

331. The same considerations of justice and fairness that undergird the attorney client privilege prevent a client from employing it in litigation against a lawyer to the lawyer's disadvantage. Wolfram, Modern Legal Ethics (1986) 308, Section 6.7.8; Wright & Miller, Federal Practice & Procedure (1997, Supp.2010), Section 5503; Restatement (Third) of the Law Governing Lawyers, Section 83, Comment b.

{¶ 43} Thus, courts apply the exception because "[i]t would be a manifest injustice to allow the client to take advantage of [the attorney-client privilege] to the prejudice of his attorney * * * [or] to the extent of depriving the attorney of the means of obtaining or defending his own rights." *Mitchell v. Bromberger*, 2 Nev. 345; see also *Doe v. A Corp.* (C.A.5, 1983), 709 F.2d 1043, 1048-1049; *Daughtry v. Cobb* (1939), 189 Ga. 113, 118, 5 S.E.2d 352; *Stern v. Daniel* (1907), 47 Wash. 96, 98, 91 P. 552; *Koeber v. Somers*, 84 N.W. at 995.

{¶ 44} Givaudan, however, relies on *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 13, for the proposition that this court has "consistently rejected the adoption of judicially created waivers, exceptions, and limitations for testimonial privilege statutes." *Jackson* dealt with the question of whether to recognize the doctrine of implied waiver of the attorney-client privilege as articulated in *Hearn v. Rhay*, 68 F.R.D. 574. Applying *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985, the court explained that R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived. *Jackson* at ¶ 11. *Jackson* is distinguishable on its facts because it dealt only with a *waiver* of the attorney-client privilege; we concern ourselves in the instant case with a common-law *exception* to the privilege, the self-protection exception.

{¶ 45} In addition, we rejected the same argument Givaudan presents in *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 744 N.E.2d 154. Vanliner relied on *McDermott*'s statement that R.C. 2317.02(A) provides the exclusive means for

waiving the attorney-client privilege. Id. at 213. We disagreed. Justice Douglas, writing for the majority, stated: "The flaw in Vanliner's argument is that *McDermott* addresses client *waiver* of the privilege, whereas *Moskovitz* sets forth an *exception* to the privilege and is therefore unaffected by our holding in *McDermott*." (Emphasis sic.) Id.

{¶ 46} Moreover, Givaudan's argument runs counter to our caselaw, which recognizes exceptions to the attorney-client privilege. As Professor Weissenberger noted, "[i]f one reads *McDermott* literally, then the crime-fraud, fee dispute, malpractice, co-client, and other public policy exceptions are invalid judicial augmentations of the statutory privilege, and have no effect." Weissenberger's Ohio Evidence at 247, Section 501.8. But our cases do recognize these exceptions. See *Boone*, 91 Ohio St.3d at 213, 744 N.E.2d 154 (lack of good faith); *Nix*, 83 Ohio St.3d at 383, 700 N.E.2d 12 (crime-fraud); *Moskovitz*, 69 Ohio St.3d at 661-663, 635 N.E.2d 331 (crime-fraud and lack of good faith); *Lemley*, 6 Ohio St.3d at 266, 6 OBR 324, 452 N.E.2d 1304 (cooperation in wrongdoing).

{¶ 47} In deciding *Jackson* and *McDermott*, we did not cast aside the well-established common-law exceptions to the attorney-client privilege. Unlike *waiver*, which involves the client's relinquishment of the protections of R.C. 2713.02(A) once they have attached, an *exception* to the attorney-client privilege falls into the category of situations in which the privilege does not attach to the communications in the first instance and is therefore excluded from the operation of the statute. See *Ross v. Abercrombie & Fitch Co.* (Apr. 22, 2008), S.D.Ohio Nos. 2:05-cv-0819 et seq., 2008 WL 1844357, * 1 ("Logically, the first issue to be addressed in any case where one party claims that any applicable privileges have been waived is whether the privileges attach to the requested documents in the first instance"); *Moskovitz*, 69 Ohio St.3d at 661, 635 N.E.2d 331 ("the privilege does not attach in a situation where the advice sought by the client and

conveyed by the attorney relates to some future unlawful or fraudulent transaction"); Restatement (Third) of the Law Governing Lawyers, Chapter 5, Topic 2, Title C, Introductory Note (distinguishing between waivers of the privilege and exceptions to it); Black's Law Dictionary (9th Ed.2009) 644 (defining "exception"); id. at 1717 (defining "waiver"). In line with this analysis, Givaudan's reliance on *Jackson* is misplaced because Ohio recognizes common-law exceptions to the privilege as outlined above.

{¶ 48} And as discussed, Ohio recognizes the common-law self-protection exception to the attorney-client privilege, which permits an attorney to testify concerning attorney-client communications where necessary to establish a claim for legal fees on behalf of the attorney or to defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client.

{¶ 49} Our decision today also comports with Prof.Cond.R. 1.6(b)(5), which provides:

{¶ 50} "A lawyer may reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, to the extent the lawyer *reasonably believes* necessary * * *

{¶ 51} "(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client * * *." (Emphasis sic.)

{¶ 52} Further, Comment [10] to Prof.Cond.R. 1.6 explains that an attorney has a right to respond to the allegations of a client in a lawsuit that the attorney committed a wrong against the client. Comment [11] also specifies that an attorney may prove the legal services rendered to a client in an action to collect a fee, noting that this aspect of Prof.Cond.R. 1.6(b) "expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary."

{¶ 53} Ohio recognizes the self-protection exception to the attorney-client privilege and that exception applies in this situation. Therefore, R.C. 2317.02(A)

does not prevent an attorney from responding to allegations that the attorney wronged a client or from establishing the reasonable value of the legal services rendered to a client to the extent that such evidence is necessary to establish a claim or defense on behalf of the attorney in litigation between the attorney and the client.

### The Work-Product Doctrine

**{¶ 54}** The work-product doctrine emanates from *Hickman v. Taylor* (1947)*,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451, in which the Supreme Court of the United States recognized that "[p]roper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. * * * This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

**{¶ 55}** Addressing these concerns, the work-product doctrine provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation, establishing "a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary." *Hobley v. Burge* (C.A.7, 2006), 433 F.3d 946, 949. However, as the Supreme Court of the United States has explained, "the doctrine is an intensely practical

one, grounded in the realities of litigation in our adversary system," and the privilege afforded by the work-product doctrine is not absolute. *United States v. Nobles* (1975), 422 U.S. 225, 238 and 239, 95 S.Ct. 2160, 45 L.Ed.2d 141.

{¶ 56} Civ.R. 26(B)(3) describes the work-product doctrine as it applies in civil cases in Ohio: "Subject to the provisions of subdivision (B)(5) of this rule [relating to retained experts], a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor."

{¶ 57} In *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, we examined the meaning of "good cause," stating that "a showing of good cause under Civ.R. 26(B)(3) requires demonstration of need for the materials - i.e., a showing that the materials, or the information they contain, are relevant and otherwise unavailable. The purpose of the work-product rule is '(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' Civ.R. 26(A). To that end, Civ.R. 26(B)(3) places a burden on the party seeking discovery to demonstrate good cause for the sought-after materials." Id. at ¶ 16.

{¶ 58} While the protections for attorney work product provided in Civ.R. 26(B)(3) expressly apply to "documents, electronically stored information and tangible things prepared in anticipation of litigation," protection also extends to intangible work product. *Hickman*, 329 U.S. at 511, 67 S.Ct. 385, 91 L.Ed. 451; *In re Cendant Corp. Securities Litigation* (C.A.3, 2003), 343 F.3d 658, 662; *United States v. One Tract of Real Property* (C.A.6, 1996), 95 F.3d 422, 428, fn.

10; 8 Wright, Miller, Kane & Marcus, Federal Practice and Procedure (3d Ed.2009), Section 2024. The protection for intangible work product exists because "[o]therwise, attorneys' files would be protected from discovery, but attorneys themselves would have no work product objection to depositions." *In re Seagate Technology, L.L.C.* (C.A.Fed., 2007), 497 F.3d 1360, 1376.

{¶ 59} When the attorney-client relationship has been put at issue by a claim for legal fees or by a claim that the attorney breached a duty owed to the client, good cause exists for the production of attorney work product to the extent necessary to collect those fees or to defend against the client's claim. See *Holmgren v. State Farm Mut. Auto. Ins. Co.* (C.A.9, 1992), 976 F.2d 573, 577 ("We agree with the several courts and commentators that have concluded that opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling"); *Morrow v. Brown, Todd & Heyburn* (Ky.1997), 957 S.W.2d 722, 726 ("While an attorney's private thoughts are most certainly deserving of special protection, that concern for privacy must give way when the activities of counsel are directly at issue in subsequent litigation"); 20 Wright & Kane, Federal Practice & Procedure Deskbook (2009), Section 87 ("It also has been held that opinion work product is discoverable if the strategy and mental impressions of a party's agents and attorneys are directly at issue in the case and the information could not be obtained elsewhere"); Restatement (Third) of the Law Governing Lawyers, Section 92, Comment c ("A party who asserts that a lawyer's assistance was defective may not invoke work-product immunity to prevent an opposing party's access to information concerning the claim"); Anderson, Cadieux, Hays, Hingerty & Kaplan, The Work Product Doctrine (1983), 68 Cornell L.Rev. 760, 831 ("When an attorney's mental impressions, theories, or conclusions are 'at issue' in a suit, courts have held that the documents containing these thoughts are discoverable").

{¶ 60} Thus, attorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere.

{¶ 61} Here, attorney work product, including information sought from King and Garfinkel regarding the staffing of the butter-flavor litigation, trial strategy, resources committed, and views that the firm provided inadequate representation through counsel lacking sufficient leadership, qualification, and experience, is directly at issue, since the reasonable value of the legal services performed by Squire Sanders and the quality of its legal work are the pivotal issues in this lawsuit, and the need for this evidence is compelling. See *Morrow*, 957 S.W.2d at 726 ("We are of the view that the opinion work product sought to be discovered must be directed to the pivotal issue in the subsequent litigation and the need for the material must be compelling").

{¶ 62} In propounding its interrogatories and in questioning King and Garfinkel, Squire Sanders sought the factual bases underlying Givaudan's allegations that Squire Sanders had breached its contractual and professional duties and overcharged for its services. King and Garfinkel's mental impressions regarding the defense of the butter-flavor litigation relate directly to and are necessary for determining the truth of these allegations, because their evaluation of Squire Sanders' performance allegedly shaped Givaudan's decisions on how to defend the litigation and on whether to continue the representation and pay the firm's fees. This information is otherwise unavailable to Squire Sanders because it is within the exclusive possession and knowledge of Givaudan, King, and Garfinkel.

{¶ 63} Accordingly, testimony of King and Garfinkel and documents related to the value and quality of the legal services rendered by Squire Sanders are not protected from discovery in this case by the work-product doctrine.

22

**Conclusion**

{¶ 64} Ohio recognizes a common law self-protection exception to the attorney-client privilege codified in R.C. 2317.02(A). Thus, when the attorney-client relationship has been placed at issue in litigation between an attorney and a client or a former client, the self-protection exception permits discovery of the evidence necessary to establish a claim or defense on behalf of the attorney.

{¶ 65} Similarly, good cause exists for discovery of otherwise unavailable attorney work product to the extent that the work product has been placed at issue in litigation by a claim for legal fees or by a charge that the attorney breached a duty owed to the client.

{¶ 66} Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court, which has already made a finding of good cause requiring Givaudan to produce the requested documents, testimony, and other evidence. Therefore, the trial court is instructed to conduct further proceedings consistent with this opinion and its earlier journalized orders.

Judgment reversed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

BROWN, C.J., not participating.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 67} I concur in judgment only because I cannot agree with the distinction the majority makes between exceptions to and waivers of the attorney-client privilege in order to circumvent this court's holding in *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487. I did not agree in *Jackson* that R.C. 2317.02(A) abrogates the common-law privilege. Id. at ¶ 25 (Lanzinger,

J., concurring in judgment only).  Therefore, I have no problem with recognizing a common-law exception to the attorney-client privilege.

{¶ 68} However, in its attempt to distinguish waiver from exception, the majority uses overly broad language and declares that an exception "falls into the category of situations in which the privilege does not attach to the communications in the first instance and is therefore excluded from the operation of [R.C. 2317.02]."  What the majority fails to recognize is that an exception, like a waiver, arises because of some action taken by the client.  It is only when the client puts the attorney's representation at issue that the privilege no longer applies.  The majority, however, would retroactively apply that action and hold that the privilege never existed.

{¶ 69} Because I believe that common-law exceptions are really no different than common-law waivers, I concur in judgment only.

_____

Jones Day, John M. Newman Jr., Louis A. Chaiten, Pearson N. Bownas, Matthew P. Silversten, and Eric E. Murphy, for appellant.

Hermann, Cahn & Schneider, L.L.P., Anthony J. Hartman, Jay H. Salamon, and Hugh D. Berkson; and Mitchell, Silberberg & Knupp, L.L.P., and Jeffrey L. Richardson, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., Sandra J. Anderson, and Michael J. Hendershot; and Eugene P. Whetzel, urging reversal on behalf of amicus curiae, Ohio State Bar Association.

_____