SINGER, J.
{¶ 1} This is an appeal from the judgment of the Ottawa County Court of Common Pleas, denying appellant's, Baycliffs Homeowners Association, Inc., motion for a protective order and to quash the subpoenas of appellees, Ali and Roxanne Al-Fayez. For the reasons that follow, we affirm, in part, and reverse, in part.
I. Facts and Procedural Background
{¶ 2} Appellees are the owners of Lot 99 in the Baycliffs Subdivision. The lot is located along a cliff looking out over Lake Erie. Immediately to the east of appellees' property, along the cliff line, is Lot 100, owned by Donald Navratil. Next to that is Lot 101, owned by Robert and Wendy Jablonski. All of the owners of the lots are members of appellant.
{¶ 3} The present matter began on May 14, 2015, when appellant filed a complaint for declaratory and injunctive relief against the Jablonskis in case No. 15CVH0155. The complaint alleged that the Jablonskis were attempting to remove an existing stairway along the cliff, which was located on their property subject to an easement to provide neighboring homeowners access to the lake below. Appellant sought to enjoin the Jablonskis from removing the old stairway and installing a new stairway without first obtaining approval from the Architectural Control Committee. On August 24, 2015, the parties in that matter reached a tentative settlement agreement that would relocate the existing spiral stairway to Navratil's property, immediately adjacent to appellees' property.
{¶ 4} On November 6, 2015, appellees filed a complaint against appellant in case No. 15CVH0345, seeking a declaratory judgment and injunctive relief prohibiting appellant from unilaterally relocating the stairway to the proposed spot, where it would obstruct their lake view and diminish the value of their property. Appellees alleged in the complaint that appellant had previously taken the position, as reflected in correspondence to appellant from appellant's counsel, Steven Ott, that any changes to the easement area required the unanimous agreement of all 16 clifftop owners holding easement rights. Because they objected to the new location of the stairway, appellees concluded that appellant did not have unanimous consent, and was thus prohibited from relocating the stairway.
{¶ 5} On January 4, 2016, the trial court consolidated the two actions. Thereafter, the parties engaged in extensive litigation. On June 30, 2016, following a pretrial *354 hearing, appellees filed their disclosure of expert witnesses, which named Ott, also appellant's trial attorney, as an expert witness on cross-examination. On August 15, 2016, appellant filed a motion in limine to preclude appellees from calling Ott as a witness, arguing that testimony by an attorney of record is generally prohibited and would be privileged. In response, appellees filed a combined motion in opposition to the motion in limine and a request to disqualify Ott. Appellees argued that Ott was the author of two documents that were published by appellant to the homeowners that took the position that any changes to the location of the stairway would require unanimous consent from the homeowners. Appellees contended that, as the author, Ott is a necessary fact witness on the issue, which is the heart of the litigation. The record does not show that the trial court has ruled on the motion in limine or the motion to disqualify.
{¶ 6} Subsequently, at a hearing held on December 9, 2016, appellees hand delivered a subpoena commanding Ott to appear at a deposition on December 20, 2016. Ott was also commanded to produce,
(A) All communications, including any documents memorializing verbal communications, with any Baycliffs property owners, witnesses, potential witness (sic), expert witnesses, or any other individuals who are not the Trustees of the Association or other lawyers working on behalf of the Association that in any way whatsoever relates to the subject matter of the above captioned consolidated litigation; and
(B) Any and all communications to or from you which were published by the Association and/or any of its Trustees to any third party, such as other Baycliffs property owners, which relate in any way whatsoever to the subject matter of the above captioned consolidated litigation.
At the same time, appellees subpoenaed Mary Beth Eisman, who has served as general counsel for appellant, commanding her to also appear for a deposition on December 20, 2016, and to produce,
(A) All communications, including any documents memorializing verbal communications, with any Board Member of the Association as well as with anyone representing the Association, including William Pietrykowski, Steven Ott, or any other lawyer or employee of Ott & Associates Co., LPA that in any way whatsoever relates to the subject matter of the above captioned litigation; and
(B) Any and all documents, including but not limited to photos, videos, recordings, notes, memoranda, and emails, letters, and texts to or from you, or copied to you, that in any way whatsoever relate the (sic) subject matter of the above captioned litigation, including but not limited to:
1) the staircases secured to the cliff;
2) the removal of any staircases;
3) the replacement of any staircases;
4) the refurbishment and/or storage of the Jablonskis' old staircase;
5) the installation of the refurbished staircase;
6) the installation of any new staircase;
7) the relocation efforts for the refurbished staircase;
8) the footpath easement;
9) the maintenance of the footpath easement and/or any staircases;
10) the opinions, suggestions, or positions of anyone, including you, regarding any of the staircases and or/the footpath easement;
*355 11) the easement and/or property rights of the Baycliffs property owners;
12) the duties, rights, and/or obligations of the Baycliffs Homeowners Association ("BHOA") with regard to staircases, the easement, and/or the Marblehead zoning code;
13) the above captioned litigation in the Ottawa County Court of Common Pleas, generally, including the BHOA's lawsuit against the Jablonskis before it was consolidated with the Al-Fayez lawsuit; and
14) the mediation held with the Jablonskis, including any documents regarding or relating to the results or conclusion of the mediation and/or the resolution of any issue(s).
{¶ 7} On December 19, 2016, appellant filed the motion for protective order and to quash the subpoena that is the subject of this appeal. In its motion, appellant stated that Eisman is and has been its general counsel for the past 13 years. Like the motion in limine, appellant again argued that testimony by an attorney of record is generally prohibited and protected by the attorney-client privilege, and appellant specifically asserted that it was not waiving confidentiality, attorney-client privilege, or the doctrine of work-product. It further argued that disclosure of any memoranda to the homeowners did not waive the attorney-client privilege because the disclosure was not authorized by the full board.
{¶ 8} In support of its argument, appellant relied on Prof.R. 1.6, which requires a lawyer to keep client information confidential, and Prof.R. 3.7, which prohibits a lawyer from simultaneously serving as an advocate and necessary witness. Relevantly, appellant asserted that Ott was not a necessary witness. Further, appellant contended that appellees were seeking testimony from Ott regarding prior legal opinions, which are work product and subject to attorney-client privilege. Appellant also stated that neither Ott nor Eisman possessed any personal knowledge other than what they have gained as counsel of record in the litigation, nor did they have any evidence that was unobtainable elsewhere. Thus, appellant concluded that appellees were not entitled to depose either Ott or Eisman.
{¶ 9} In addition, appellant argued that the subpoenas were procedurally defective and not enforceable because: (1) appellees served the subpoenas well after the discovery deadline of August 26, 2016; (2) appellees did not comply with Loc.R. 14.02 of the Ottawa County Court of Common Pleas which requires parties to make a timely and good faith effort to confer and agree to schedules for taking depositions; (3) appellees failed to adhere to Civ.R. 30(B)(1), which requires notice of the subpoenas to every other party in the action; (4) appellees failed to comply with Civ.R. 45(B), which requires the serving party to provide a witness fee for attendance and mileage upon the issuance of a subpoena, and also requires the person serving the subpoena to file a return with the clerk; and (5) the request for documents was overly burdensome under Civ.R. 45(C) because Eisman approximated that it would take 20 hours to compile all of the documents requested by appellees.
{¶ 10} In response, appellees argued that appellant's request for a protective order as to "any testimony" is overly broad and should be denied. As to Ott, appellees incorporated their arguments from the motion to disqualify, in which they asserted that since Ott published the memoranda with the full knowledge and approval of the board, and since the memoranda were already admitted into evidence, any privilege regarding the issue had been waived. As to Eisman, appellees *356 presented a 2010 email in which Eisman stated she was "tendering my resignation to [appellant] effective immediately." Thus, they concluded that she was not general counsel for appellant. However, even if she were still general counsel, appellees argued that her communications with other homeowners was not privileged, offering as an example a 2007 email wherein she wrote, "The Association will not violate any owner's rights with respect to the easement, nor will it enforce them at Association expense. Any issues that arise concerning the location or use of the easement in the future will need to be handled between and among you and your own legal counsel."
{¶ 11} On December 29, 2016, the trial court denied appellant's motion to quash, and ordered that "All parties shall comply with all Ohio Civil Rules and Local Rules in issuing subpoenas." Appellant appealed the trial court's decision, but we remanded the case back to the trial court and ordered it to provide a basis for its denial of appellant's motion. On January 26, 2018, the trial court entered its judgment entry on remand denying appellant's motion. In its entry, the court found that Ott "published communications and legal opinions with knowledge and approval of the Board of Baycliffs." The court also found that Eisman had resigned as counsel for appellant in 2010. Thus, the court reasoned that the "attorney-client privilege does not exist and/or has been waived by Attorneys Ott and Eisman."
II. Assignment of Error
{¶ 12} Appellant has timely appealed the trial court's January 26, 2018 judgment, and now asserts two assignments of error for our review:
I. The Trial Court erred as a matter of law when it denied Appellant's Motion to Quash Subpoenas and Motion for Protective Order by finding that the attorney / client privilege did not exist in this case or that it had been waived by Attorneys Ott and Eisman.
II. The Trial Court erred as a matter of law when it denied Appellant's Motion to Quash Subpoenas and Motion for Protective Order by failing to recognize the legal duty of confidentiality which prohibits Appellant's attorneys Ott and Eisman from providing testimony and documents.
III. Analysis
{¶ 13} Initially, we find that appellant's assignments of error are interrelated, thus we will address them together.
{¶ 14} Under Civ.R. 26(B)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The scope of discovery is limited, however, by Civ.R. 26(C), which provides that the trial court, "[u]pon motion by any party or by the person from whom discovery is sought, and for good cause shown, * * * may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In this case, appellant moved for a protective order, which the trial court denied.
{¶ 15} Generally, "[w]e review a trial court's denial of a protective order under an abuse-of-discretion standard." Randall v. Cantwell Mach. Co. , 10th Dist. Franklin No. 12AP-786, 2013-Ohio-2744, 2013 WL 3341201, ¶ 11 ; Rane K. D. v. Gregory A.D. , 6th Dist. Huron No. H-98-046, 1999 WL 461763 (July 9, 1999) ("The court's grant or denial of a protective order will not be reversed on appeal absent a finding of abuse of discretion."). An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable.
*357 Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "However, with respect to a privilege claim, the appropriate standard of review depends on whether the privilege claim presents a question of law or a question of fact." Randall at ¶ 9. "When it is necessary to interpret and apply statutory language to determine whether certain information is confidential and privileged, a de novo standard applies." Id. ; see also Ward v. Summa Health Sys. , 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13 ("Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. However, if the discovery issue involves an alleged privilege * * * it is a question of law that must be reviewed de novo."). "When a claim of privilege requires review of factual questions, such as whether an attorney-client relationship existed, an abuse-of-discretion standard applies." Randall at ¶ 9.
{¶ 16} In its brief, appellant invokes the rule set forth in Shelton v. Am. Motors Corp. , 805 F.2d 1323, 1327 (8th Cir.1986). That rule, which is followed in federal courts and has been utilized by at least one Ohio appellate court, provides that a party seeking to depose opposing counsel must demonstrate that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. Id. ; see also Estate of Mikulski v. Cleveland Elec. Illuminating Co. , 8th Dist. Cuyahoga No. 96748, 2012-Ohio-588, 2012 WL 504505, ¶ 18.
{¶ 17} The court in Shelton reasoned,
Undoubtedly, counsel's task in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged * * * and recognized as disrupting the adversarial nature of our judicial system * * *. Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious. (Internal citations omitted.) Id.
{¶ 18} As anticipated by Shelton , appellees' attempt to depose appellant's trial counsel predictably has been resisted through claims of attorney-client privilege under R.C. 2317.02(A)(1) and the work-product doctrine. R.C. 2317.02(A)(1) identifies privileged communications, and states, in relevant part, "The following persons shall not testify in certain respects: (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client." Relatedly, the work product doctrine is contained in Civ.R. 26(B)(3), which provides, "[A] party may obtain discovery of documents, electronically stored information *358 and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor." The Supreme Court of Ohio has further explained that "attorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere." Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp. , 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 60. Because the Shelton test requires that the information sought is not privileged, and otherwise imposes similar requirements to that of the work product doctrine, we find that it is appropriate to apply it in this situation.
{¶ 19} As it pertains to attorney Ott, we find that appellees have failed to satisfy the Shelton test. It is evident from the course of the proceedings that appellees seek to depose Ott in order to glean his legal opinions at particular points in time as to the enforcement of and rights under the easement. While the parties contest whether this information is protected by the attorney-client privilege, appellees have not made any argument that the information sought from Ott is not his work product. Even if we assume that the subject matter is not privileged due to waiver, appellees would still not be justified in deposing Ott.
{¶ 20} First, other means exist for appellees to obtain the information regarding Ott's legal opinions. In fact, appellees are already in possession of the memoranda in which Ott sets forth his view that any changes to the easement would require unanimous consent amongst the dominant estate holders, and to the extent other communications between Ott and appellant, or other third parties, exist regarding his interpretation of the easement issue, that information would be discoverable through appellant.
{¶ 21} Second, we fail to see how the information appellees are seeking is crucial to the preparation of its case. In their briefs below and on appeal, appellees repeat that the information sought is relevant and critical, and that it goes to the heart of the case. But, despite appellees' exhortations, they only explain that the information is necessary to examine appellant's change in position from requiring unanimous consent pre-litigation to its current position that it may unilaterally make changes within the easement area. As such, appellees do not appear to be seeking the development of any material facts , but instead are seeking details concerning Ott's legal opinion . Here, however, the ultimate question in this case, i.e., whether unanimous consent is required to make changes within the easement area, is a legal one to be determined by the court. Ott's changing views on this legal issue in no way impairs appellees' ability to argue what the law requires under the terms of the easement.
{¶ 22} Thus, we find that appellees have not demonstrated substantial grounds to justify the extraordinary measure of deposing opposing counsel under the Shelton test, nor have they demonstrated good cause under the work product doctrine. Therefore, we hold that the trial court abused its discretion in denying the motion for a protective order and to quash the subpoena relative to attorney Ott.
{¶ 23} Turning now to attorney Eisman, we find that the same considerations do not apply. In its judgment entry, the trial court found that Eisman resigned as counsel in 2010, well before any of the *359 relevant events began in 2014. The trial court's finding is supported by Eisman's letter of resignation, which was attached to appellees' opposition to appellant's motion for a protective order. Thus, no attorney-client relationship existed during the relevant time period, and Eisman is not bound by the attorney-client privilege or the duty of confidentiality relative to events that occurred during that period. Furthermore, because Eisman is not counsel of record for appellant in this case, the Shelton test does not apply. Therefore, we hold that the trial court did not abuse its discretion when it denied appellant's motion for a protective order and to quash the subpoena relative to attorney Eisman.
{¶ 24} Accordingly, appellant's first and second assignments of error are well-taken, in part, and not well-taken, in part.
IV. Conclusion
{¶ 25} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed, in part, and reversed, in part. Specifically, the trial court's judgment denying appellant's motion for a protective order and to quash the subpoena is affirmed relative to Mary Beth Eisman, and reversed relative to Steven Ott. This matter is remanded to the trial court for further proceedings consistent with this decision. The parties are ordered to share the costs of this appeal evenly, pursuant to App.R. 24.
Judgment affirmed, in part, and reversed, in part.
Thomas J. Osowik, J.
James D. Jensen, J.
CONCUR.