[Cite as *Summit Park Apts., L.L.C. v. Great Lakes Reinsurance*, 2016-Ohio-1514.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Summit Park Apartments, LLC, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-820 |
| v. | : | (C.P.C. No. 13CV-13201) |
| Great Lakes Reinsurance (UK), PLC, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on April 12, 2016

**On brief:** *Cavitch, Familo & Durkin Co., L.P.A., Michael R. Rasor*, and *Gregory E. O'Brien*, for appellee. **Argued:** *Michael R. Rasor*

**On brief:** *Frost Brown Todd LLC, Katherine Klingelhafer*, and *David W. Walulik*; *Kennick & Associates* and *Michael T. Kennick*, for appellants. **Argued:** *David W. Walulik*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Great Lakes Reinsurance (UK), PLC, ("Great Lakes") appeals a decision of the Franklin County Court of Common Pleas, denying Great Lakes' motion for a protective order as to six documents Great Lakes maintained were protected by the attorney-client privilege and the work product doctrine. Because we find that some of the documents are protected by the work product doctrine and the record is insufficient to determine whether or not the other documents in contention are protected by the attorney-client privilege, we reverse and remand to the trial court with instructions, such that on remand, further consideration of these bars to discovery should be supported by the trial court's reasoning made on the record.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  Plaintiff-appellee, Summit Park Apartments, LLC, ("Summit Park") owns an apartment complex located at 4370 Le Marie Court in Columbus, Ohio.  On August 20, 2012, a fire destroyed 36 units of that apartment complex.  Summit Park held an insurance policy issued by Great Lakes concerning the property at issue.  The policy in question covered construction costs, loss of business income, and out-of-pocket expenses. The policy constitutes an enforceable contract and required Great Lakes to pay all claims within 30 days of presentation and acceptance of proof of loss.

{¶ 3}  The day after the fire, August 21, 2012, Summit Park informed Great Lakes in writing about the fire. On October 9, 2012, Summit Park submitted a written construction proposal to Great Lakes to repair the property.  On January 7, 2013, Great Lakes made partial payment.  Sometime thereafter, Summit Park inquired of Great Lakes when it could expect the remainder of the payment.  On June 3, 2013, the insurer paid additional construction costs.  However, on several occasions thereafter, Summit Park notified Great Lakes that it had experienced lost rents and other out-of-pocket expenses and requested further insurer payments to address those concerns.

{¶ 4}  On December 6, 2013, Summit Park brought suit against Great Lakes, Claims Adjusting Group, Inc., and Commercial Industrial Building Owner's Alliance, Inc. in connection with the allegedly delayed and missing payments owing to Summit Park under the insurance policy contract.  Defendants filed a motion to dismiss Summit Park's claims for breach of fiduciary duty and fraud as to all defendants on the grounds that these causes of action were insufficiently pled.  Defendants also requested that the trial court dismiss Claims Adjusting Group, Inc. and Commercial Industrial Building Owner's Alliance, Inc. from the matter on the ground that Great Lakes, and not its adjusters, was the insurer and party to the contract for insurance at issue.  The trial court granted the motion.  At the time of the discovery dispute that is the subject of this appeal, only Summit Park and Great Lakes were parties to the suit, and the only claims remaining were for declaratory judgment (Count 1), breach of contract (Count 2), and bad faith (Count 3).

{¶ 5}  During the course of discovery, the parties engaged in negotiation regarding whether certain documents that Great Lakes identified as work product or protected by

attorney-client privilege, were discoverable.  Unable to resolve their differences, Great Lakes filed a motion for a protective order on August 18, 2014 as to certain documents. The parties fully briefed the matter.  On August 21, 2014, pursuant to a July 28, 2014 Order of Reference on discovery, the parties participated in a conference with a magistrate of the Franklin County Court of Common Pleas.  The magistrate reviewed the disputed documents in camera, informed the parties via e-mail that none was protected by the privilege asserted, and memorialized that decision in an entry on May 5, 2015.  The entry contained no legal reasoning or factual analysis of any kind.  Neither party requested, pursuant to Civ.R. 53(D)(3)(a)(ii) (requiring a request being made before the filing of the magistrate's decision or within seven days of its filing), findings of fact and conclusions of law from the magistrate. Despite the trial court having stated in its entry that it reviewed findings of fact and conclusions of law from the magistrate, none existed.

{¶ 6}   Great Lakes filed objections to the magistrate's decision on May 19, 2015, and the parties engaged in briefing on the objections.  On August 25, 2015, in an entry that discussed none of the specific objections, the trial court adopted the magistrate's order and overruled all Great Lakes' objections.

{¶ 7}   Great Lakes now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 8}   Great Lakes offers three assignments of error for consideration:

> First Assignment of Error: The trial court erred when it denied attorney-client privilege to three e-mails between undersigned trial counsel and their clients which concern defense of this case and were created after this case was filed.

> Second Assignment of Error: The trial court erred when it denied work product privilege to two e-mails between undersigned counsel which concern mental impressions and factual investigation of this case and were created after this case was filed.

> Third Assignment of Error: If the five e-mails are an exception to privilege, the trial court erred in failing to bifurcate policyholder's bad faith claim and stay proceedings until conclusion of the policyholder's breach of insurance contract claim.

## III. DISCUSSION

### A. Jurisdiction

{¶ 9} Summit Park's brief argues that this appellate court lacks jurisdiction to consider this case because there is no final appealable order in that Great Lakes has not established that an immediate appeal is necessary to afford a meaningful and effective remedy on the issue of privilege.

{¶ 10} R.C. 2505.02(B) provides:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> * * *
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

Moreover, the Supreme Court of Ohio has stated:

> A proceeding for "discovery of privileged matter" is a "provisional remedy" within the meaning of R.C. 2505.02(A)(3). An order granting or denying a provisional remedy is final and appealable *only* if it has the effect of "determin[ing] the action with respect to the provisional remedy and prevent[ing] a judgment in the action in favor of the appealing party with respect to the provisional remedy" *and* "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4).

(Emphasis sic.) *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, ¶ 5.

{¶ 11} The trial court's order adopting the magistrate's decision and overruling Great Lakes' objections determined the action the trial court was going to take with respect to the matter of privilege and, in requiring disclosure of potentially privileged material, prevented Great Lakes from thereafter securing a decision in their favor on the issue. Once privileged material has been disclosed, its disclosure cannot be retroactively

prevented or retracted. This is because, even if use of the documents as evidence were later forbidden or limited, the knowledge of what the documents contained would still be in the minds of counsel for Summit Park and would still potentially affect the way the attorneys litigate the case. As this court and the Twelfth and Seventh District Courts of Appeals have stated, " ' "the proverbial bell cannot be unrung." ' " *Schmidt v. Krikorian*, 12th Dist. No. CA2011-05-035, 2012-Ohio-683, ¶ 21, quoting *Ramun v. Ramun*, 7th Dist. No. 08MA185, 2009-Ohio-6405, ¶ 26, quoting *Concheck v. Concheck*, 10th Dist. No. 07AP-896, 2008-Ohio-2569, ¶ 10; *see also Legg v. Hallet*, 10th Dist. No. 07AP-170, 2007-Ohio-6595, ¶ 16. The Supreme Court found no appealable order in *Smith* but, factually, the party seeking to defend privilege and work product on appeal in *Smith* failed to show cause when ordered to do so on whether there was a final appealable order. *Smith* at ¶ 6. By contrast, Great Lakes has argued, both in its primary brief and reply, that it will be denied a meaningful remedy if not permitted to appeal because the privilege is lost once the documents are exposed to opposing counsel. We, therefore, distinguish this case from *Smith* and hold that the trial court's order was final and appealable. R.C. 2505.02(B)(4).

### B. First and Second Assignments of Error – Whether the Trial Court Erred in Determining the Records in this Case were Discoverable

{¶ 12} The Supreme Court has explained:

> Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 151-152, 569 N.E.2d 875. However, if the discovery issue involves an alleged privilege, as in this case, it is a question of law that must be reviewed de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009 Ohio 2496, 909 N.E.2d 1237, ¶ 13.

*Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 13. This court has also noted that, insofar as factual issues must be determined by the trial court as a predicate to resolving the legal question of privilege, such factual determinations should be accorded deference. *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 18.

{¶ 13} "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 18; *see also, e.g., State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10,

2011-Ohio-6009, ¶ 27 ("In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship.").

{¶ 14} R.C. 2317.02(A)(1) and (2) provides:

The following persons shall not testify in certain respects:

(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context * * *, the attorney may be compelled to testify on the same subject.

* * *

(2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

The Supreme Court has explained the application of the statute as follows:

R.C. 2317.02(A) provides a testimonial privilege--i.e., it prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. A testimonial privilege applies not only to prohibit testimony at trial, but also to protect the soughtafter communications during the discovery process. The purpose of discovery is to acquire information for trial. Because a litigant's ultimate goal in the discovery process is to elicit pertinent information that might be used as testimony at trial, the discovery of attorney-client communications necessarily jeopardizes the testimonial privilege. Such privileges would be of little import were they not applicable during the discovery process.

*Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 7, fn. 1.  However, because the statute does not address communications other than those between attorneys and clients, the common law is still relied on to accord privilege to communications, for example, between clients and agents of the attorney. *State v. Post*, 32 Ohio St.3d 380, 385 (1987).

{¶ 15} In addition, the work product doctrine offers some protection for materials prepared by attorneys, even if they are not communications of the sort protected by privilege.  Ohio Rule of Civil Procedure 26, for instance, provides that:

> [A] party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor.

Civ.R. 26(B)(3); see also Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp., 127 Ohio St.3d 161, 2010-Ohio-4469, ¶ 54-60.

> "[A] showing of good cause under Civ.R. 26(B)(3) requires demonstration of need for the materials - i.e., a showing that the materials, or the information they contain, are relevant and otherwise unavailable. The purpose of the work-product rule is '(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts.' Civ.R. 26(A). To that end, Civ.R. 26(B)(3) places a burden on the party seeking discovery to demonstrate good cause for the sought-after materials."

Squire, Sanders & Dempsey at ¶ 57, quoting Jackson at ¶ 16.

{¶ 16} At issue in this case are five e-mails, one of which contains an attachment.[1] They are Bates stamped GL001888, GL001933-35, GL001938-41, GL001955-58, and GL001969-70 (with GL001970 being the attachment to the e-mail at GL001969).  We address the status of each, mindful that neither the magistrate's decision nor the trial court's entry adopting the magistrate decision provide findings of fact and conclusions of

---

[1] These e-mails were apparently shared with the trial court in camera and are not part of the record transmitted from the trial court.  But they are nonetheless before this court by virtue of having been filed under seal.

law, thereon about any of the particular documents reviewed under seal and disputed by Great Lakes in discovery. We note that both parties, but especially Great Lakes, who asserted the privilege and work product against producing the documents in discovery, had the opportunity to request findings of fact and conclusions of law either before the magistrate's decision or within seven days after the magistrate's decision was filed, but it did not do so. Civ.R. 53(D)(3)(a)(ii). This is problematic in that GL001933-35, GL001938-41, and GL001955-58 indicate that these communications for which Great Lakes asserts the attorney-client privilege were shared with an unidentified person not otherwise named in the record. We begin our analysis with a discussion concerning these documents.

### 1. GL001933-35, GL001938-41, and GL001955-58

{¶ 17} Each of these three sets of e-mails was printed from the e-mail account of Liana Sahakyan, whose name appears on the header of each printed e-mail chain. However, neither the record nor the briefs anywhere identify or even mention Sahakyan, to say nothing of how Sahakyan came into possession of these communications. Because there exist in the record no findings of fact and conclusions of law from the magistrate or the trial court, we do not know if this factor was considered by the trial court in deciding that these documents are not privileged. Had Great Lakes requested findings of fact and conclusions of law from the magistrate, we may be better able to understand Sahakyan's relationship to the parties and their counsel and whether or not Great Lakes waived the privilege. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13 ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.")

{¶ 18} What we do know from the record's sealed documents is that Sahakyan had possession of these e-mails (at least long enough to print them from her own email account). However, since we cannot determine who Sahakyan is or how she came to possess these communications, we are unable to evaluate with certainty whether these documents are privileged. *See* R.C. 2317.02 (permitting an attorney to be compelled to testify on otherwise privileged communications "if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context"); *Foley v. Poschke*, 137 Ohio St. 593, 595 (1941) (remarking that "[t]he general rule that

communications between an attorney and his [or her] client in the presence of a third person are not privileged, does not apply when such third person is the agent of either the client or the attorney"). While we acknowledge that the most likely assumption is that Sahakyan is an assistant for one of the counsel involved in this case, for all we know, Sahakyan could be a librarian, the proprietor of a local print shop, or anyone else with an e-mail account and a printer. We cannot make assumptions about facts not in evidence. *Morgan* at ¶ 13. Thus, we cannot effectively review the trial court's decision on these three e-mails.

### 2. GL001888

{¶ 19} GL001888 consists of two e-mails shared between Michael Kennick, Katherine Klingelhafer, David Walulik, and Wanda Hoffman. Kennick, Klingelhafer, and Walulik are all counsel of record for Great Lakes, and Hoffman is identified in Great Lakes' privilege log as administrative support staff to attorney Klingelhafer. Without revealing the contents in any specific detail, the e-mails at face value consist of utterly routine case strategy discussions and directions on accomplishing mundane tasks associated with the case. Because these e-mails do not consist of communications between attorneys and clients, but rather just between attorneys and support staff, they cannot be the subject of attorney-client privilege.

{¶ 20} However they are work product. They convey counsel's mental impressions (however routine and ordinary) on matters related to the case, and Summit Park has not identified any good cause showing that the materials or the information they contain are relevant and otherwise unavailable. Civ.R. 26(B)(3); *Squire, Sanders & Dempsey* at ¶ 57.

{¶ 21} Instead, Summit Park argued at the trial court level that it was entitled to discover this work product because it had alleged a bad faith claim. In *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 212 (2001), the Supreme Court recognized that attorney-client privilege does not extend to documents showing bad faith by a party or showing attorneys acting on the parties' behalf to further bad faith, because such documents are "wholly unworthy of the protections afforded by any claimed privilege." *Id.*, citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 661 (1994); *see also* R.C. 2317.02(A)(2) (providing an exception to privilege where an attorney is aiding or furthering a client's ongoing or future bad faith). The Second District Court of Appeals

has expressly recognized that *Boone*'s exception for materials "wholly unworthy of the protections afforded by any claimed privilege" also extends to work product. *Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 2003-Ohio-5960, ¶ 14-16. However, in *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, S.D.Ohio No. 2:07-CV-1285, 18 (Apr. 17, 2012), the United States District Court for the Southern District of Ohio found that, while a bad faith claim was sufficient to warrant the trial court's in camera review of the challenged documents, the content of the documents did not evidence bad faith sufficient to justify overriding the evidentiary privilege and ordering disclosure. The situation in this case is similar. The documents at issue in Bates stamp number GL001888 show no evidence of bad faith. While it can be argued that they are but part of a cumulative series of e-mails which in totality evidence bad faith, because the record does not contain such other evidentiary elements, we cannot assemble documents not before us or speculate about what they might be. Our decision is limited to the record before us and whether the trial court properly decided that these e-mails were subject to discovery. With no findings of fact and conclusions of law, we are left to review the e-mails for ourselves. Finding on their face no evidence of bad faith we reverse the trial court's judgment as to GL001888.

### 3. GL001969-70

{¶ 22} These documents consist of a list of activity records prepared initially by the client that were organized by counsel into a new document in preparation for litigation along with e-mail discussion about the same between counsel of record. Hoffman, as was true in GL001888, is again copied on the e-mail chain. While the records prepared by the client in their raw form are not privileged and would be discoverable, the document here appears to be a new document prepared by an attorney in an effort to make the records in question more sensible to him and his colleagues. Thus, it is work product, and Summit Park has not identified any good cause showing that the materials are relevant and otherwise unavailable. Civ.R. 26(B)(3); *Squire, Sanders & Dempsey* at ¶ 57. Moreover, the exception to privilege as is set forth in *Boone* and R.C. 2317.02(A)(2) for circumstances in which an attorney aids or furthers his client's bad faith does not apply with respect to these documents. Our review of these records shows they contain no evidence of bad faith by Great Lakes or its attorneys.

{¶ 23} Again, our decision as to GL001969-70 is limited to the record before us and whether the trial court properly decided that these e-mails were subject to discovery. With no findings of fact and conclusions of law, we are left to review the e-mails for ourselves. Finding on their face no evidence of bad faith, we reverse the trial court's judgment as to GL001969-70.

{¶ 24} We sustain Great Lakes' first and second assignments of error. GL001888 and GL001967-70 are work product and not discoverable under any exception. As to GL001933-35, GL001938-41, and GL001955-58, it is not possible to determine from the trial court record whether they are privileged or not because one of the individuals who had access to the communications is unidentified in the record. Had the trial court provided any discernable explanation of its reasoning, or had one or more of the parties timely request findings of fact and conclusions of law, our conclusion in this regard might be different and less wasteful of judicial and litigation resources. We must decline to speculate upon the reasons the trial court made the decision it did, and we therefore remand as to GL001933-35, GL001938-41, and GL001955-58 for a full and proper exploration of the facts and legal issues.

### C. Third Assignment of Error – Whether the Trial Court should have Bifurcated the Bad Faith Claim Upon Determining to Allow Discovery of Allegedly Privileged Materials

{¶ 25} As we have already determined to sustain the first two assignments of error and reverse and remand, this assignment of error is now moot and will not be considered.

## IV. CONCLUSION

{¶ 26} We find some sealed communications are work product and not subject to the bad faith exception. In addition, we are unable to identify from the record all the persons whom the documents in question list as recipients and possessors of the communications. Thus, we cannot intelligibly evaluate whether such communications are or are not privileged. For these reasons, we reverse and remand to the Franklin County Court of Common Pleas for proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

TYACK and HORTON, JJ., concur.

_____