[Cite as *DMS Constr. Ents., L.L.C. v. Homick*, 2020-Ohio-4919.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DMS CONSTRUCTION                    :
ENTERPRISES, L.L.C.,

      Plaintiff-Appellee,          :

                                                    No. 109343

      v.                           :

DANIEL J. HOMICK, ET AL.           :

      Defendants-Appellants.       :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** October 15, 2020

Civil Appeal from the Lakewood Municipal Court
Case No. 2019-CVF-375

***Appearances:***

Hahn Loeser & Parks L.L.P., and Royce R. Remington, David M. Hopkins, and Jack P. Mills, Jr., *for appellee.*

Allison Hayes, *for appellants.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendants-appellants Daniel and Victoria Homick (collectively, the "Homicks") appeal from an order of the Lakewood Municipal Court denying their motion for a protective order and allowing plaintiff-appellee DMS Construction Enterprises L.L.C. ("DMS") to depose the Homicks' cause-and-origin expert, Adam

Roy, a fire investigator and electrical expert with Fire and Explosion Consultants, L.L.C. ("Fire and Explosion Consultants"). For the reasons that follow, we dismiss this appeal.

**Factual Background and Procedural History**

{¶ 2} On September 27, 2018, a fire originated in a condominium unit located at Winton Place Condominiums, 12700 Lake Avenue, Unit 2803, Lakewood, Ohio, owned by the Homicks. The Homicks resided in Raleigh, North Carolina and they rented out the property; however, the property was vacant at the time of the fire. Liberty Mutual Insurance Company ("Liberty Mutual") was the Homicks' insurer for the property.

{¶ 3} DMS owned condominium unit 2806, adjacent to the condominium unit owned by the Homicks. It was also a rental property. The fire caused damage to DMS' condominium unit and personal property inside the unit. Due to the fire damage, DMS was allegedly unable to rent out its unit for five weeks.

{¶ 4} On February 15, 2019, DMS filed a complaint in the Lakewood Municipal Court, asserting claims of breach of contract, negligence and trespass against the Homicks. DMS alleged that the fire was caused by the Homicks' negligence, that, by virtue of the fire, the Homicks had breached the bylaws and rules and regulations of the Winton Place Homeowners Association (of which both DMS and the Homicks were members) and that the fire was an "unlawful trespass upon DMS." DMS sought to recover compensatory damages estimated at $10,500, plus

interest, costs and attorney fees for the damage and losses it sustained as a result of the fire.

{¶ 5} The Homicks filed an answer, denying the material allegations of the complaint and asserting various affirmative defenses. At that time, the Homicks were represented by attorney John Rasmussen, whom Liberty Mutual had assigned to represent them in the action.[1] The parties proceeded with discovery. The trial court set a deadline of November 25, 2019 for the exchange of expert reports.

{¶ 6} In June 2019, attorney Rasmussen contacted DMS' counsel about the Homicks' plan to schedule an expert inspection of the property and/or items that had been removed from the property following the fire. DMS' counsel indicated that DMS or its counsel did not need to be present for the inspection provided DMS received information regarding what occurred during the inspection. In a June 13, 2019 email to DMS' counsel, attorney Rasmussen confirmed the terms of their agreement as follows:

> As I informed you in our June 6, 2019 conversation, the defendants have retained an origin and cause fire expert to investigate the fire circumstances.
>
> We are in the process of coordinating an evidence inspection with the other parties making claims related to this fire.
>
> You informed me you will not be involved in the expert inspection process, and do not need to be notified of the inspection date.
>
> I agreed to share with you any evidence developed during the expert inspection and made available to me.

---

[1] Attorney Rasmussen was an employee of Liberty Mutual.

{¶ 7} In a June 17, 2019 email to attorney Rasmussen, DMS' counsel further stated:

> I informed you that I do not need to be present in Columbus for the tests performed on the refrigerator. I do want copies of the reports from those tests. However, Plaintiff is not bound by your investigation and is allowed to perform its own discovery in this matter.

{¶ 8} On August 30, 2019, Roy sent an email to the Homicks' counsel, DMS' counsel and others advising that he had been "retained by Liberty Mutual Insurance Co. to conduct a joint laboratory examination of the evidence items recovered and collected" from the Homicks' condominium unit. He identified the date, time and location of the "joint laboratory examination," indicated that it would be "destructive in nature" and requested that anyone who planned to attend the examination reply to the email. The examination occurred on or around September 23, 2019.

{¶ 9} In or around mid-October 2019, attorney Allison Hayes replaced attorney Rasmussen as co-counsel for the Homicks. Attorney Hayes filed a notice of substitution of counsel on October 22, 2019.[2]

{¶ 10} On October 16, 2019, DMS served a "subpoena duces tecum without deposition" on Fire and Explosion Consultants via Federal Express, requesting production of the following within 14 days of service:

1.      Copies of any and all documents, communications, results, and other items related to the joint laboratory examination of the

---

[2] The Homicks assert that attorney Rasmussen retired; however, there is nothing in the record from attorney Rasmussen to confirm this. Attorney Rasmussen did not file a notice of withdrawal of counsel and did not sign the notice of substitution of counsel. Attorney Hayes was also a Liberty Mutual employee.

evidence items [sic] recovered and collected from the site of the fire that occurred on August 27, 2018, at 12700 Lake Avenue, Unit 2803, Lakewood, OH 44107.

2.  Copies of any and all documents, communications, and other items related to the cause and origin of the fire that occurred on August 27, 2018, at 12700 Lake Avenue, Unit 2803, Lakewood, OH 44107.

{¶ 11} In response to the subpoena, attorney Hayes sent an email to DMS' counsel stating: "Regardless of whether a report is produced or not, Civ.R. 26(B)(5) protects any documents you are seeking. No documents will be produced. We will take it up with the judge, along with the motion for sanctions."

{¶ 12} The Homicks also filed objections to the subpoena served on Fire and Explosion Consultants, setting forth the following objections to the "documents, communications, results, and other items" requested in the subpoena:

OBJECTIONS: Overly broad, vague, unduly burdensome, protected by attorney work product privilege, and undiscoverable pursuant to Civ.R. 26(B)(5). Further answering, and without waiving said objections, all discoverable and non-privileged documents have and/or will be produced prior to the expert and discovery deadlines.

No response to the subpoena was provided by Fire and Explosion Consultants.

{¶ 13} On October 17, 2019, the Homicks served "supplemental responses" to certain of the interrogatories and requests for production DMS had previously served on the Homicks. In their supplemental responses, the Homicks identified Roy as a testifying expert but indicated that he had not yet prepared an expert report:[3]

---

[3] Although she had not yet formally entered an appearance in the case, the responses and objections were signed by attorney Hayes as counsel for the Homicks.

INTERROGATORY NO. 7:  Identify any and all experts, regardless of whether you intend to call them as a witness at any hearing or trial in this Lawsuit, with whom you have consulted regarding the Fire (including, without limitation, the cause of the Fire and all damages caused by the Fire) and the general topics on which the expert is prepared to render an opinion.

ANSWER:  Adam Roy of Fire and Explosion Consultants, LLC will testify as to the cause and origin of the fire.

* * *

INTERROGATORY NO. 10:  Identify all inspections and reports of Defendants' Condo since September 1, 2015, being sure to identify the person, company, or business entity that performed or assisted in performance of each inspection and report.

ANSWER:  * * * Defendants' expert, Adam Roy, of Fire and Explosion Consultants, LLC, inspected the property on September 23, 2019.  Mr. Roy determined the cause of the fire was not Defendants.  Should a report be produced, it will be timely provided to Plaintiff.

INTERROGATORY NO. 17:  Identify the cause and origin of the Fire.

ANSWER: Defendants did not cause the fire and have no duty to establish who caused the fire other than affirmatively establishing that they were not the cause.  Further answering, upon information and belie[f] at this time, Defendants believe that the fire originated from the stove [top] and that the sole cause of the [f]ire was the negligence of Winton Place employee, John Rosko, who left an exhaust fan box on top of the stove when two burners were in the "on" position at the time that the fire started.

REQUEST FOR PRODUCTION NO. 1:  Produce copies of any and all information, items, and documents provided to any expert witness retained by Homick for purposes of this lawsuit.

RESPONSE:  Objection — work product.

REQUEST FOR PRODUCTION NO. 2:  Produce copies of any and all information, items, and documents that concern, relate to, or otherwise evidence reports, opinions of fact and/or law, and conclusions of fact and/or law that have been provided to you by any person, with the sole exceptions of your counsel of record in this Lawsuit, in connection with

the investigation of the claims and/or factual assertion set forth in this Lawsuit. This Request includes, but is not limited to, any and all documents concerning, relating to, or otherwise evidencing reports — including any and all drafts, preliminary, final, and supplemental reports — that have been prepared by any person you have contacted or consulted as an expert witness, regardless of whether or not you intend to utilize that person as an expert witness in this Lawsuit.

RESPONSE: Objection. This request seeks information that is subject to attorney-client privilege and work product exclusion. Without waiving, Defendants have not yet received Adam Roy's expert report. We reserve the right to supplement this response pursuant to the Ohio Rules of Civil Procedure, Court Order and Local Court Rules.

{¶ 14} On October 21, 2019, DMS filed a "written notice of discovery dispute." DMS asserted that although the Homicks' former counsel, attorney Rasmussen, had agreed to provide DMS with a copy of "any expert report" and had agreed that "all evidence developed during [Roy's] expert inspection would be shared with [DMS]," the Homicks' new counsel, attorney Hayes, "continues to interfere with [Fire and Explosion Consultants'] production of the information" requested in DMS' subpoena.

{¶ 15} The Homicks filed a combined opposition to the notice of discovery dispute and a motion for sanctions, arguing that the information sought in the subpoena was protected from disclosure by the "attorney work product privilege" and was "undiscoverable pursuant to Civ.R. 26(B)(5)." The Homicks also sought an award of attorney fees against DMS as a sanction for "engaging in frivolous and unnecessary motion practice" and failing to provide a copy of the subpoena served on DMS to the Homicks' counsel. In support of her opposition, attorney Hayes submitted an affidavit in which she averred that she was not provided with a copy of

the subpoena to Fire and Explosion Consultants[4] and that she had informed DMS'

counsel that (1) Roy had been hired by the Homicks (not Liberty Mutual), (2) all

communications with Roy went through the Homicks' counsel (not Liberty Mutual)

and (3) the Homicks would timely produce an expert report if Roy would be

testifying at trial. Attorney Hayes further averred that she had offered to provide

DMS with an affidavit confirming the facts surrounding Roy's retention and a

privilege log for communications with Roy.[5]

{¶ 16} DMS filed a motion to strike and/or deny the Homicks' combined

opposition to DMS' notice of discovery dispute and motion for sanctions, disputing

the Homicks' claims.

{¶ 17} The trial court scheduled a hearing to address the discovery dispute.

Because the discovery dispute involved documents that were purportedly in the

possession of Fire and Explosion Consultants and/or Liberty Mutual, neither of

which were parties to the action, the trial court ordered the parties to give notice of

---

[4] Although attorney Hayes avers in her affidavit that she did not receive a copy of the subpoena served on Fire and Explosion Consultants, she was not counsel of record at the time the subpoena was served. On October 21, 2019, DMS filed a notice of service of the subpoena with a certificate of service indicating that a copy of the notice had been served on attorney Rasmussen via regular U.S. mail on October 17, 2019. Attorney Rasmussen and attorney Hayes were part of the same firm. Further, the record contains an email from attorney Mills to attorney Hayes, dated October 17, 2019, attaching an electronic copy of the subpoena.

[5] There is no indication in the record that a privilege log was ever produced. Because there is no privilege log, we do not know what, if any, documents or other materials exist that the Homicks contend are protected from discovery by the work product doctrine or consulting expert privilege, including whether Roy prepared a report regarding the "joint laboratory examination" or his opinion(s) or conclusion(s) regarding the cause and origin of the fire.

the hearing to counsel for those entities "in the event" those entities wished to "raise any objections involved in the discovery dispute between the parties." The hearing was held on November 7, 2019. Counsel for DMS and the Homicks attended the hearing. No representatives of Fire and Explosion Consultants and no other representatives of Liberty Mutual[6] attended the hearing.

{¶ 18} Although the issue was not fully resolved at the hearing, some progress appeared to have been made. According to the trial court, the Homicks' counsel stated at the hearing that she did not object to the subpoena served on Fire and Explosion Consultants or the taking of Roy's deposition by DMS; however, she stated that DMS would have to subpoena Roy for deposition because he was not an employee of the Homicks and she "could not require Mr. Roy to attend any deposition or pretrial conference without a subpoena." Following the hearing, the trial court issued a journal entry, detailing what had occurred at the hearing and the plan, moving forward, as follows:

> Two (2) primary issues were raised and disputed by the parties[:] 1) whether Adam Roy was an agent, employee, or witness hired by the defendant[s] and/or the defendant[s'] law firm and 2) the identity of any persons present when Adam Roy conducted tests on the cause and origin of the fire that is the basis of the claim in this case. Although counsel for the defendant[s] asserted that all parties were given notice of the date and time of the testing, plaintiff's counsel asserted that they relied on the representation by prior defense [c]ounsel John Rasmussen that personal attendance by plaintiff's counsel or representative was not required and all information and results from the testing would be provided to the plaintiff. Current defense counsel stated that she was not aware of the representation made by Mr.

---

[6] As stated above, attorney Hayes was an employee of Liberty Mutual.

Rasmussen, although members of the same law firm, and that she did not have any information about the location of Mr. Rasmussen.

Notwithstanding the initial discovery dispute, defendant[s'] counsel stated that she did not object to the subpoena served on Adam Roy or the taking of his deposition by the plaintiff. The record shows that a final pretrial conference is scheduled for December 9, 2019 at 1:30 p.m. This hearing is continued to that date and time with Adam Roy to be present at the hearing. Counsel for the parties shall resolve the specifics of securing Mr. Roy's attendance and whether or not a subpoena is required in light of defendant[s'] counsel['s] assertion that Mr. Roy was hired as a defense witness. In the event a deposition of Mr. Roy can be completed prior to December 9, 2019 with production of the requested documents from him, his attendance may be excused from the December 9, 2019 hearing by agreement of counsel.

{¶ 19} The Homicks' counsel thereafter backed away from her purported statement that she did not object to the subpoena served on Fire and Explosion Consultants or the taking of Roy's deposition.[7] On November 12, 2019, attorney Hayes sent an email to DMS' counsel, indicating that she had just spoken with Roy and that he had indicated to her that (1) he had never spoken to anyone at Liberty Mutual other than attorney Rasmussen and attorney Hayes, (2) Roy's understanding was that he was to serve as an expert for the Homicks and that Liberty Mutual was paying his fees pursuant to its insurance agreement with the Homicks, (3) Roy's examination of the evidence was limited to a visual inspection

---

[7] In their appellate briefs, the Homicks assert that "[t]he Homicks' attorney never agreed to produce Adam Roy for deposition regarding his opinions, only the scope of his retention." However, the Homicks did not challenge the trial court's statement (made in its November 7, 2019 journal entry) that "defendant[s'] counsel stated that she did not object to the subpoena served on Adam Roy or the taking of his deposition by the plaintiff" in their subsequently filed motion for protective order. On the other hand, there is also nothing in the record to suggest that attorney Hayes had agreed that she would not object to particular questions asked of Roy during any deposition by DMS.

and photographs, (4) Roy did not conduct any "testing" and his inspection was not destructive, (5) Roy had no documentation from the inspection other than his photographs and "his own illegible notes" and (6) the evidence was still available for inspection "in the same condition it was in during his inspection." In an effort "to avoid unnecessary expenses involved in attending a hearing on December 9," Attorney Hayes offered, "[w]ithout waiving privilege," to provide an affidavit from Roy "affirming" these facts, to "organize a telephone call" with Roy during which DMS' counsel could inquire about "the scope of his retention, and what his inspection entailed, but not his opinions" and provide copies of the photographs Roy took during the inspection. She also indicated that the evidence was being stored in Roy's storage unit in Akron and that DMS could "have access to the evidence for any expert [DMS] retain[s] to inspect."

{¶ 20} Although there is no indication in the record that the Homicks ever amended their discovery responses to withdraw their identification of Roy as a testifying expert, attorney Hayes asserted in her email that "[t]he Homicks utilized Mr. Roy as a consulting expert but opted not to utilize him as a testifying expert in this matter." Attorney Hayes further indicated that the Homicks would not pay for Roy to attend the December 9, 2019 hearing and that if DMS "opt[ed] to proceed to the December 9 hearing, Mr. Roy will be submitting his invoice for attending the hearing to Plaintiff."

{¶ 21} DMS proceeded with efforts to schedule Roy's deposition. On November 22, 2019, DMS' counsel sent an email to attorney Hayes, requesting dates

when she was available for Roy's deposition and stating that DMS "also requires all information in Mr. Roy's files, including all communications with Mr. Roy."

{¶ 22} On November 25, 2019, the Homicks filed a motion for protective order to preclude DMS from "subpoenaing file materials and eliciting expert testimony" from Roy. The Homicks also requested that the trial court enter an order requiring DMS to subpoena Roy for the December 9, 2019 hearing if DMS did not agree with the Homicks' proposed resolution of the parties' discovery dispute as set forth in attorney Hayes' November 12, 2019 email. The Homicks argued that Roy was an expert they "consulted with and retained in anticipation of litigation" and that Roy's file materials and "opinions and testimony" were work product protected from discovery under Civ.R. 26(B)(3) and Civ.R. 26(B)(5)(a). The Homicks further asserted that attorney Rasmussen was "the sole person in charge of communicating with and retaining Roy" and argued that even if Liberty Mutual had retained Roy directly, his file materials and opinions would still be "privileged" because Liberty Mutual's only involvement in the case was to assist in the defense of its insured. The Homicks stated that it was "manifestly unfair and not permissible under the attorney-client privilege, the work product doctrine and Civ.R. 26 for Plaintiff to attempt to subpoena privileged information from Defendants' expert or elicit testimony regarding his opinions to attempt to establish a liability argument against Defendants."

{¶ 23} In support of their motion, the Homicks attached an affidavit from Daisy Tran, the Liberty Mutual litigation claims specialist assigned to the matter, in

which she averred that she had had no contact or communications with Roy or anyone else at Fire and Explosion Consultants. The Homicks also attached an affidavit from Roy in which he averred that (1) attorney Rasmussen had asked him to perform "an inspection on the items damaged by the subject fire," (2) it was his understanding that he was serving as "a consultant/expert in defense of Daniel and Victoria Homick" and Liberty Mutual was paying his fees pursuant to its insurance agreement with the Homicks, (3) he had never communicated with anyone from Liberty Mutual other than attorneys Rasmussen and Hayes and (4) during the inspection, he "did not perform any destructive testing that significantly altered the condition of the items inspected" and "[t]he evidence is still available for inspection."

{¶ 24} DMS opposed the motion. DMS argued that it was entitled to obtain any documents or other materials responsive to its subpoena and to depose Roy because the Homicks had already agreed to provide the documents, information and deposition testimony DMS sought from Roy, i.e., attorney Rasmussen had agreed to provide "a copy of all evidence discovered during the joint laboratory testing performed by Mr. Roy" and attorney Hayes had stated "in open [c]ourt on the record" at the November 6, 2019 hearing that she did not object to the subpoena or the taking of Roy's deposition. DMS also contended that (1) the Homicks had failed to establish the information sought was protected from disclosure by the work product doctrine because Roy had been retained by, and prepared a report for, Liberty Mutual rather than the Homicks, (2) there was "good cause" under Civ.R.

26(B)(3) to allow discovery of Roy's information even if the work product doctrine applied and (3) because the Homicks had identified Roy as a testifying expert, DMS was entitled to depose Roy under Civ.R. 26(B)(5)(b).

{¶ 25} On December 16, 2019, the trial court denied the Homicks' motion for a protective order and held that DMS could proceed with Roy's deposition. Although the Homicks had requested, in their motion for protective order, that DMS be precluded both from subpoenaing documents from Fire and Explosion Consultants and deposing Roy, the trial court addressed only DMS' request to depose Roy in its December 16, 2019 order.[8] The trial court determined that the Homicks had failed to prove that Roy's testimony was protected by the "work product privilege" and that even if the "work product privilege" applied, DMS had shown "good cause" to obtain his testimony under Civ.R. 26(B)(3). The trial court explained:

> In their motion for protective order, the defendants admit that Mr. Roy is the defendants' expert, but seek to prevent his deposition. The defendants assert that the testimony of Mr. Roy is within the scope of attorney/client and work product privileges. * * *
>
> From the language of [former Civ.R. 26(B)(3)], the work product privilege is not absolute, but may be discovered upon a showing of good cause. * * *
>
> It is unclear from the record who employs Mr. Roy. His own conflicting statements in the record, as well as representations by defense counsel, raise a factual issue in this regard. The affidavit

[8] The trial court stated: "The defendants' motion for a protective order is limited to the testimony of Mr. Roy. Although defense counsel admitted during the pretrial conference that there are also documents involved that defense counsel was willing to provide to the plaintiff's counsel, she continues to withhold these documents, notwithstanding prior request by the plaintiff.

offered by defense counsel does not resolve the issue due to the ambiguities * * * in the record which could only be resolved by his testimony with the opportunity for the plaintiff to cross examine Mr. Roy on the issue.

As the general rule as stated by Civil Rule 26, counsel are required to provide discovery. The burden is on the defendants as the moving party to show that the testimony o[f] Mr. Roy is not discoverable or otherwise protected by privilege. * * * As neither party presented witnesses regarding the motion for a protective order, the issue was left for the court to decide based on the record in this case. Based upon the record and without Mr. Roy's own testimony under oath, as well as other information, the court finds that the defendants have failed to prove that the testimony of Mr. Roy is protected under the work product privilege.

In the present case the plaintiff asserts that prior defense counsel, John Rasmussen, agreed in June, 2019, prior to the inspection and examination, to share "any evidence developed during the expert inspection." In addition, the laboratory examination would be "destructive in nature." In reliance on Mr. Rasmussen's representation to plaintiff's counsel, the plaintiff did not have anyone attend the inspection/examination. Due to the destructive nature of the examination, the defendants cannot renege on the agreement to share the information with the plaintiff. Although current defense counsel disputes this prior agreement, notwithstanding the emails between counsel, Mr. Rasmussen has not attended either of the past two (2) pretrial conferences, both of which directly involved the representations by Mr. Rasmussen to share the information obtained by Mr. Roy from the examination.

From the record, even if the defendants could prove the work product privilege applied, based upon prior representations of defense counsel, John Rasmussen, and relied on by plaintiff's counsel, the court finds that the plaintiff has met its burden of showing good cause within the meaning of Civil Rule 26(B)(3).

Applying the standard set forth in *Squire, Sanders & Dempsey v. Givaudan Flavors Corp.*, the testimony of Adam Roy, regarding the cause of the fire is directly at issue in this case. In addition, the need for the information is both compelling and cannot be obtained elsewhere due to the destructive nature of the experiments conducted by Mr. Roy. Based on the foregoing, the motion for a protective order

is overruled and the plaintiff is permitted to proceed with the deposition of Adam Roy.

(Footnotes omitted.)

{¶ 26} The trial court further stated that "nothing in [its] order" would prevent the Homicks "from raising timely objections to any questions to Adam Roy on the grounds of attorney-client privilege." The trial court indicated that, "[i]n the event of such questions," Roy would be "required to answer the questions and the specific questions and answers shall be excluded from the remainder of the deposition and submitted to the court under seal for an *in camera* inspection and hearing."[9]

{¶ 27} The Homicks appealed, raising a single assignment of error for review:

> The trial court erred in denying the Homicks' motion for protective order and ordering the Homicks' non-testifying consulting expert to appear and give deposition testimony concerning his opinions formed in anticipation of litigation.

**Law and Analysis**

{¶ 28} The Homicks contend that Roy was a nontestifying consulting expert retained in connection with litigation. They argue that as a nontestifying consulting expert, Roy's opinions are "privileged" work product under former Civ.R. 26(B)(3) and (B)(5)(a) and that the trial court erred in allowing DMS to depose him and "subpoena [his] work product."

---

[9] The trial court did not specifically address DMS' argument that DMS was entitled to depose Roy as a testifying expert pursuant to former Civ.R 26(B)(5)(b).

**The Work Product Doctrine and Consulting Expert Privilege**

{¶ 29} The work product doctrine precludes discovery of the mental impressions, conclusions, opinions, strategies and legal theories, both tangible and intangible, generated or commissioned by counsel in anticipation of litigation or preparation for trial. *Squire, Sanders & Dempsey, L.L.P., v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 56-60. The consulting expert "privilege" is a subset of the work product doctrine. An expert consultant's work product — the expert consultant's knowledge of the facts, opinions and conclusions — are part of the work product of the attorney who retained the expert. As a part of its limits on discovery, Rule 26(B) sets forth protections from discovery for both attorney work product and the work product of experts. "In Ohio, protection for an attorney's work product is codified in Civ.R. 26, which notably recognizes work product as separate from privileged matters." *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 18.

{¶ 30} Unlike the attorney-client privilege, which belongs to the client and can only be waived by the client, work product protection belongs to the attorney and an attorney's actions can waive work product protection, including by voluntary disclosure of information to an adverse party. *See, e.g., In re Grand Jury*, 4th Dist. Washington Nos. 93CA09, 93CA10 and 93CA12, 1995 Ohio App. LEXIS 2567, 41-42, 49 (June 1, 1995) ("If a party from whom discovery is sought has disclosed such materials to third persons, including counsel representing interests adverse to such party from whom discovery is sought, the privilege is destroyed as to such party."),

citing 36 Ohio Jurisprudence 3d, Discovery and Depositions, Section 36, at 52 (1982); *see also Komorowski v. John P. Hildebrand Co., L.P.A.*, 8th Dist. Cuyahoga No. 101500, 2015-Ohio-1295, ¶ 27 ("'[D]isclosure to an adversary waives the work product protection as to items actually disclosed.'"), quoting *Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981).

{¶ 31} Further, Civ.R. 26(B) allows work product protection to be removed by an opposing party's demonstration of sufficient need for protected materials or information. *See, e.g., Burnham* at ¶ 18; *Squire, Sanders & Dempsey*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 57, 60; *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 16; *Adamson v. Buckenmeyer*, 6th Dist. Lucas No. L-20-1014, 2020-Ohio-4241, ¶ 43.

{¶ 32} Former Civ.R. 26(B)(3)[10] governs discovery of work product and "trial preparation materials." It provides in relevant part:

> Subject to the provisions of subdivision (B)(5) of this rule, a party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor.

{¶ 33} The purpose of the work-product rule is "(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the

---

[10] Civ.R. 26(B)(3) in effect at the time of the trial court's December 16, 2019 order was renumbered as Civ.R. 26(B)(4) effective July 1, 2020.

favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts." *Jackson* at ¶ 16. "'[A] showing of good cause * * * requires demonstration of need for the materials — i.e., a showing that the materials, or information they contain, are relevant and otherwise unavailable.'" *Squire, Sanders & Dempsey* at ¶ 57, quoting *Jackson* at ¶ 16.

{¶ 34} Former Civ.R. 26(B)(5)[11] specifically addresses discovery from experts retained in anticipation of litigation or in preparation for trial. Former Civ.R. 26(B)(5)(a) states, with respect to nontestifying, consulting experts:

> Subject to the provisions of division (B)(5)(b) of this rule and Civ.R. 35 (B), a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice.

Former Civ.R. 26(B)(5)(b) further provides, with respect to persons identified as testifying experts:

> As an alternative or in addition to obtaining discovery under division (B)(5)(a) of this rule, a party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, and (ii) to state the subject matter on which the expert is expected to testify. Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject matter. Discovery of the expert's opinions and the grounds therefor is restricted

---

[11] The language of Civ.R. 26(B)(5) in effect at the time of the trial court's December 16, 2019 order was modified and renumbered as Civ.R. 26(B)(7) effective July 1, 2020.

to those previously given to the other party or those to be given on direct examination at trial.

{¶ 35} "The consulting expert 'privilege' is intended to prevent the 'unfairness that could result from allowing an opposing party to reap the benefits of another party's efforts and expense.'" *Nunley v. Nationwide Children's Hosp.*, 10th Dist. Franklin No. 13AP-425, 2013-Ohio-5330, ¶ 16, quoting *Plymovent Corp. v. Air Technology Solutions, Inc.*, 243 F.R.D. 139 (D.N.J. 2007). Although discovery of facts known or opinions held by a nontestifying expert retained in anticipation of litigation or preparation for trial is permitted only upon a showing of "undue hardship to obtain facts and opinions on the same subject" or "other exceptional circumstances indicating that denial of discovery would cause manifest injustice," once a party identifies an expert as an expert witness it expects to testify at trial, that action entitles any other party to discover the facts known or opinions held by the expert that are relevant to the stated subject matter to the extent the expert's opinions have been "previously given to the other party" or are to be given on direct examination at trial. Former Civ.R. 26(B)(5)(a)-(b); *Adamson,* 2020-Ohio-4241, at ¶ 42, citing *Masters v. Kraft Foods Global, Inc.*, 6th Dist. Lucas No. L-11-1273, 2012-Ohio-5325, ¶ 13-15. "The duty to cooperate with discovery under [such] circumstances is not protected [by] the attorney work-product doctrine." *Adamson* at ¶ 42, citing *Masters* at ¶ 15.

{¶ 36} The party claiming that requested discovery is protected from disclosure by the work product doctrine or the consulting expert "privilege" has the

burden of establishing that it applies. *See, e.g., In re Special Grand Jury Investigation,* 10th Dist. Franklin No. 18AP-730, 2019-Ohio-4014, ¶ 12; *Owens v. ACS Hotels, L.L.C.*, 9th Dist. Summit No. 27787, 2016-Ohio-5506, ¶ 9; *Stegman v. Nickels*, 6th Dist. Erie No. E-05-069, 2006-Ohio-4918, ¶ 14, citing *Peyko v. Frederick*, 25 Ohio St.3d 164, 166, 495 N.E.2d 918 (1986). The burden of proving that the need for documents or information overrides the work product protection rests with the party seeking disclosure. *See, e.g., Squire, Sanders & Dempsey*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 57, citing *Jackson*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 16; *Galati v. Pettorini*, 8th Dist. Cuyahoga No. 101712, 2015-Ohio-1305, ¶ 26; *In re Special Grand Jury Investigation* at ¶ 12.

**Jurisdiction**

{¶ 37} Before reviewing the merits, we must first consider whether we have jurisdiction to hear this appeal. This court has a duty to examine, sua sponte, potential deficiencies in jurisdiction. *See, e.g., Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*, 8th Dist. Cuyahoga No. 105037, 2017-Ohio-7174, ¶ 7; *Arch Bay Holdings, L.L.C., v. Goler*, 8th Dist. Cuyahoga No. 102455, 2015-Ohio-3036, ¶ 9. Appellate courts can only "review and affirm, modify, or reverse judgments or final orders." Article IV, Section 3(B)(2), Ohio Constitution; *see also* R.C. 2501.02, 2505.03(A). "If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and the appeal must be dismissed." *Assn. of Cleveland Firefighters, #93 v. Campbell*, 8th Dist. Cuyahoga No. 84148, 2005-

Ohio-1841, ¶ 6; *see also Scanlon v. Scanlon*, 8th Dist. Cuyahoga No. 97724, 2012-Ohio-2514, ¶ 5 ("In the absence of a final, appealable order, the appellate court does not possess jurisdiction to review the matter and must dismiss the case sua sponte."). Before this court can exercise jurisdiction over an appeal, the trial court's order must meet the finality requirements of R.C. 2505.02. *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 10.

{¶ 38} On September 3, 2020, we ordered the parties to submit supplemental briefs addressing the issue of whether the order appealed from constitutes a final, appealable order. In their supplemental brief, the Homicks assert that the order at issue in this case is a final, appealable order under R.C. 2505.02(B)(4). DMS contends that the order is not a final order.

{¶ 39} Pursuant to R.C. 2505.02(B)(4), an order that grants or denies a provisional remedy is a final order that may be appealed if: (a) "[t]he order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy" and (b) "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."

{¶ 40} Discovery orders are generally interlocutory orders that are neither final nor appealable. *Walters v. Enrichment Ctr. of Wishing Well, Inc.*, 78 Ohio St.3d 118, 120-121, 676 N.E.2d 890 (1997). However, under R.C. 2505.02(A)(3), a "provisional remedy" is defined to include "discovery of privileged matter." *Smith*

*v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, ¶ 5. Further, "[a]ny order compelling the production of privileged or protected materials * * * satisfies R.C. 2505.02(B)(4)(a) because it would be impossible to later obtain a judgment denying the motion to compel disclosure if the party has already disclosed the materials." *Burnham*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, at ¶ 21; *see also Phillips v. Vesuvius USA Corp.*, 8th Dist. Cuyahoga No. 108888, 2020-Ohio-3285, ¶ 14.

{¶ 41} In their supplemental brief, the Homicks contend that the trial court's order is a final order under R.C. 2505.02(B)(4) because "[t]he underlying issue in this case is the compelled production of attorney-client/work product evidence." The Homicks assert that "[a]ppellants were ordered to produce Adam Roy for deposition despite the existence of a clear applicable precedent of attorney-client relationship and work product privileges" and that "the law in Ohio is that when an order is issued compelling the production of privileged materials * * * a final, appealable order is made."

{¶ 42} In its supplemental brief, DMS argues that the trial court's order does not satisfy the requirements of R.C. 2505.02(B)(4) because: (1) the trial court's decision does not "compel the production" of privileged information and contains safeguards to prevent the disclosure of privileged information and (2) the Homicks have failed to establish that any of the requested information at issue is privileged because (a) the Homicks had already identified Roy as a testifying expert, (b) Roy

was hired by Liberty Mutual, not the Homicks and (c) the Homicks' counsel had previously agreed to allow Roy to be deposed.

{¶ 43} A party is not required to conclusively prove the existence of privileged or protected information as a precondition to appellate review under R.C. 2505.02(B)(4). *Byrd v. U.S. Xpress, Inc.*, 2014-Ohio-5733, 26 N.E.3d 858, ¶ 12 (1st Dist.). "To impose such a requirement would force an appellate court 'to decide the merits of an appeal in order to decide whether it has the power to hear and decide the merits of an appeal.'" *Id.*, quoting *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, 928 N.E.2d 763, ¶ 35 (10th Dist.). However, a party must make a "colorable claim" that information or materials subject to discovery are privileged or otherwise protected from discovery in order to qualify as a provisional remedy. *Byrd* at ¶ 12; *see also Phillips*, 2020-Ohio-3285, at ¶ 12; *Loukinas v. State Farm Mut. Auto. Ins. Co.*, 1st Dist. Hamilton No. C-180462, 2019-Ohio-3300, ¶ 17.

{¶ 44} A "colorable claim" is one that is seemingly genuine or legally valid, i.e., a "plausible legal claim" that has "a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven." The Legal Information Institute, *Wex*, https://www.law.cornell.edu/wex/colorable_claim (accessed Sept. 22, 2020). The case law provides little guidance as to what should be considered in determining whether a party has made a "colorable claim" that information or materials are privileged or otherwise protected from discovery. However, it appears that, at a minimum, the appellant must make a plausible argument that is based on the particular facts at issue. *See, e.g., Burnham*, 151 Ohio St.3d 356, 2016-Ohio-

8000, 89 N.E.3d 536, at ¶ 3, 29 (appellant made a "colorable claim" that incident report was governed by the attorney-client privilege where it "plausibly alleged" that incident report contained privileged information).

{¶ 45} The Ohio Supreme Court has held that any "order compelling the production of materials alleged to be protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4)." *Burnham* at ¶ 30. However, no such blanket rule of appealability applies with regard to orders involving the discovery of information or materials allegedly protected from disclosure by the work product doctrine or consulting expert privilege.

{¶ 46} In *Chen*, the Ohio Supreme Court held that the appellate court lacked jurisdiction to consider the merits of a trial court order compelling discovery of a surveillance video over an attorney work product objection because the appellants failed to establish that the requirements of R.C. 2505.02(B)(4)(b) had been met. 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 1-2, 6-7. On appeal, the Tenth District affirmed the trial court's decision compelling discovery of the video and held that the order was final and appealable because the surveillance video was "attorney work product subject to discovery for good cause." *Id.* at ¶ 3. The Tenth District did not specifically determine whether the appellants would have a meaningful and effective remedy through appeal after final judgment. *Id.*

{¶ 47} The Ohio Supreme Court ordered the parties to show cause why the appeal should not be dismissed for lack of a final, appealable order. *Id.* at ¶ 6. In response, the appellants did not show why they would not be afforded a meaningful

and effective remedy through a postjudgment appeal. *Id.* at ¶ 6, 8. The court held that, therefore, the appellate courts lacked jurisdiction and could not reach the merits of the appeal. *Id.* at ¶ 6-7.

{¶ 48} In determining that the appellate courts lacked jurisdiction to review the order, the Ohio Supreme Court stated in *Chen*:

> The court of appeals correctly observed that the order in this case determined the discovery issue against appellants * * * preventing a judgment in their favor as to that issue. This is not the entire analysis. [Appellants] have never argued, much less established, that they would not be afforded a meaningful or effective remedy through an appeal after a final judgment is entered by the trial court resolving the entire case. They did not address the issue in any of their briefs here or in the court of appeals. * * * We therefore cannot reach the merits of this appeal. There is no indication that the requirement in R.C. 2505.02(B)(4)(b) has been met.
>
> * * * For an order granting discovery of privileged matter to be a final order, an appellant must affirmatively establish that an immediate appeal is necessary in order to afford a meaningful and effective remedy. R.C. 2505.02(B)(4)(b). This burden falls on the party who knocks on the courthouse doors asking for interlocutory relief. Rendering a judgment on the merits of this appeal would signal to litigants that if they are unhappy with discovery orders that might result in their losing their case, they can spend a few years appealing the matter all the way up to this court without proving a real need to do so. [Appellants] failed to establish why an immediate appeal is necessary here, and we must presume an appeal in the ordinary course would be meaningful and effective.
>
> This ruling does not adopt a new rule, nor does it make an appeal from an order compelling disclosure of privileged material more difficult to maintain. An order compelling disclosure of privileged material that would *truly* render a postjudgment appeal meaningless or ineffective may still be considered on an immediate appeal.

*Id.* at ¶ 6-9.

{¶ 49} In *Burnham*, the Ohio Supreme Court accepted jurisdiction "to resolve whether an order compelling the production of documents allegedly protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4)" and "to clarify [its] holding regarding privilege, the attorney-work-product doctrine, and R.C. 2505.02(B)(4)(b) in *Chen*." 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, at ¶ 1. In *Burnham*, a slip-and-fall case, the trial court rejected the defendant hospital's argument that its incident report was protected by the attorney-client privilege and not discoverable and ordered the hospital to produce it. *Id.* at ¶ 5-6. The hospital appealed the trial court's order. *Id.* at ¶ 7. This court dismissed the appeal for lack of jurisdiction based on *Chen*, reasoning that the hospital had failed to affirmatively establish that an immediate appeal was necessary and that it would be sufficiently prejudiced by the disclosure to satisfy R.C. 2505.02(B)(4)(b). *Id.* The Ohio Supreme Court reversed the dismissal of the appeal and held that the trial court's order requiring the production of documents allegedly protected by the attorney-client privilege was immediately appealable. *Id.* at ¶ 3.

{¶ 50} *Burnham* was a split decision: three justices concurred in a lead opinion, three justices concurred in judgment only and one justice dissented. The justices were split 3-3 on the issue of whether *Chen* should be limited to cases claiming work product protection or overruled in its entirety. The lead opinion did not explicitly overrule *Chen* and, instead, "limit[ed] it solely to its facts." *Id.* at ¶ 9. The opinion went into great detail about the differences between the attorney-client privilege and the work product doctrine, stating that the work product doctrine

"does not necessarily involve the inherent, extrajudicial harm involved with a breach of the attorney-client privilege" and that "the same guarantee of confidentiality is not at risk with an attorney's work product" such that order compelling the production of allegedly protected work product, unlike an order compelling the production of allegedly privileged attorney-client communications, would not automatically satisfy R.C. 2505.02(B)(4)(b):

> We hold that an order requiring the production of information protected by the attorney-client privilege causes harm and prejudice that inherently cannot be meaningfully or effectively remedied by a later appeal. Thus, a discovery order that is alleged to breach the confidentiality guaranteed by the attorney-client privilege satisfies R.C. 2505.02(B)(4)(b) and is a final, appealable order that is potentially subject to immediate review. Other discovery protections that do not involve common-law, constitutional, or statutory guarantees of confidentiality, such as the attorney-work-product doctrine, may require a showing under R.C. 2505.02(B)(4)(b) beyond the mere statement that the matter is privileged. Our holding in *Chen* is limited to the latter context.

*Id.* at ¶ 2, 26; *see also id.* at ¶ 16-19.

{¶ 51} The lead opinion emphasized "the explicitly limited nature of [the court's] holding in *Chen*" stated that because *Chen* "involved a failure to respond to the issue being adjudicated" and involved only the work product doctrine and not attorney-client privilege, it did not "control the outcome" in *Burnham.* *Id.* at ¶ 14-15, 27. It further explained:

> The attorney-client privilege and the attorney-work-product doctrine provide different levels of protection over distinct interests, meaning that orders forcing disclosure in these two types of discovery disputes do not necessarily have the same result that allows an immediate appeal.
>
> * * *

Any order compelling the production of privileged or protected materials certainly satisfies R.C. 2505.02(B)(4)(a) because it would be impossible to later obtain a judgment denying the motion to compel disclosure if the party has already disclosed the materials. But the irreversible nature of the order alone does not satisfy R.C. 2505.02(B)(4)(b), which requires consideration of whether an appeal after judgment can rectify the damage of an erroneous trial-court ruling. * * * Given the differing interests and protections of the attorney-client privilege and the attorney-work-product doctrine, the damage that needs to be rectified and the need for immediate appeal may differ as well.

* * *

Exposure of the information that is to be protected by attorney-client privilege destroys the confidentiality of possibly highly personal or sensitive information that must be presumed to be unreachable. *Taylor v. Sheldon*, 172 Ohio St. 118, 121, 173 N.E.2d 892 (1961). * * *

But the same guarantee of confidentiality is not at risk with an attorney's work product. * * * [A]ny harm from disclosure would likely relate to the case being litigated, meaning that appellate review would more likely provide appropriate relief. * * * This is not to say that compelling the disclosure of an attorney's work product pursuant to Civ.R. 26(B)(3) would never satisfy R.C. 2505.02(B)(4)(b) and require an interlocutory appeal. But it does not necessarily involve the inherent, extrajudicial harm involved with a breach of the attorney-client privilege.

*Id.* at ¶ 15, 21, 25-26; *see also In re Grand Jury Proceeding of Doe*, 150 Ohio St.3d 398, 2016-Ohio-8001, 82 N.E.3d 1115, ¶ 22 ("When a party is compelled to produce material protected by the attorney-client privilege, harm extends beyond the actual case being litigated and causes the loss of a right that cannot be rectified by a later appeal, and R.C. 2505.02(B)(4)(b) is accordingly satisfied.").[12]

---

[12] *In re Grand Jury Proceeding of Doe*, decided after *Burnham*, the Ohio Supreme Court declined to address, when holding that an order enforcing a grand jury subpoena and ordering production of alleged privileged information was a final order pursuant to R.C. 2505.02(B)(4), "whether the R.C. 2505.02(B)(4)(b) requirement is satisfied with

{¶ 52} The three justices who concurred in judgment only did not believe a different rule should apply to appeals of cases involving attorney-client privilege and claims of work product protection and maintained that both should be immediately appealable. *Burnham* at ¶ 36.

{¶ 53} Thus, although a trial court's ruling ordering the disclosure of materials allegedly covered by the attorney-client privilege automatically warrants an immediate appeal, *Burnham* at ¶ 2, 25, 29, appellate courts must decide on a case-by-case basis whether a trial court ruling ordering the disclosure of information allegedly protected by the work product doctrine is appealable based on whether the appellant has shown that a postjudgment appeal would be "*truly* * * * meaningless or ineffective"; "the irreversible nature of the order alone does not satisfy R.C. 2505.02(B)(4)(b)." *Burnham* at ¶ 21, 26-27; *Chen* at ¶ 9; *see also In re Special Grand Jury Investigation*, 2018-Ohio-760, 107 N.E.3d 793, ¶ 13, 15 (10th Dist.2018) (finding that the court had no appellate jurisdiction because "appellants have not addressed, either in appellate briefs or at oral argument, whether an appeal is necessary in order to afford a meaningful and effective remedy in this case").

{¶ 54} Although the Homicks assert in their supplemental brief that "[t]he underlying issue in this case is the compelled production of attorney-client/work product evidence," there is, in fact, no claim of attorney-client privilege at issue in this appeal. The Homicks' sole assignment of error is limited to the application of

---

regard to any information alleged to be protected by the attorney-work-product doctrine or the common-interest doctrine" in the case. *Id.* at ¶ 22-23, fn. 3.

the consulting expert "privilege"/work product doctrine, i.e., the Homicks contend that the trial court erred "in ordering the Homicks' nontestifying consulting expert to appear and give deposition testimony concerning his opinions formed in litigation." Likewise, the Homicks identify the sole issue for appellate review as "[w]hether a party's non-testifying consulting expert is protected from disclosing opinions for in anticipation of litigation under the work product privilege and Civ.R. 26?" The Homicks make no mention of attorney-client privilege in either of their merits briefs.

{¶ 55} Further, it is clear that to the extent the trial court's order addressed discovery of allegedly privileged attorney-client communications, it is not a final, appealable order under R.C. 2505.02(B)(4). The trial court's order did not "compel" the production of attorney-client privileged communications. The trial court expressly stated in its December 16, 2019 order that "[n]othing" in the order would prevent the Homicks "from raising timely objections to any questions to Adam Roy on the grounds of attorney-client privilege" and that "[i]n the event of such questions," Roy would be "required to answer the questions" and that the questions and Roy's answers would be "submitted to the court under seal for an in camera inspection and hearing." An order for a trial court's in camera inspection of allegedly privileged or protected testimony or materials is not an order that grants a provisional remedy. *See, e.g., Daher v. Cuyahoga Community College Dist.*, 155 Ohio St.3d 271, 2018-Ohio-4462, 120 N.E.3d 830, ¶ 14, 16 (discovery order requiring disclosure of grand jury materials to trial court for in camera review did not grant a

provisional remedy and was not a final appealable order); *Pietrangelo v. Polyone Corp.*, 9th Dist. Lorain No. 19CA011550, 2020-Ohio-2776, ¶ 9 ("an order that 'direct[s] a witness opposing a discovery request to submit the requested materials to an in camera review so that the court may determine their discoverable nature is not a final appealable order pursuant to R.C. 2505.02'"), quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 616 N.E.2d 181 (1993), syllabus; *Citibank, N.A. v. Hine*, 2017-Ohio-5537, 93 N.E.3d 108, ¶ 15-17 (4th Dist.) (trial court order requiring individual to appear for deposition was not a final, appealable order where trial court "ha[d] not yet determined whether any of the information sought * * * is privileged" and "[c]ounsel may object to questions posed * * * so the trial court can determine the applicability of any privilege."). Only where there is an order mandating production of the information or materials will there be a final order over which the appellate court has jurisdiction. *Daher* at ¶ 14, 16; *Nationwide Mut. Fire Ins. Co. v. Jones*, 4th Dist. Scioto No. 15CA3709, 2017-Ohio-4244, ¶ 15 (trial court order denying motion to stay discovery did not satisfy R.C. 2505.04(B)(4) because the order did not compel appellant to produce any particular information and "'Ohio appellate courts will not review orders that fall short of ordering the disclosure of privileged information'"), quoting Paul R. Rice, et al., 1 *Attorney-Client Privilege: State Law Ohio*, Section 11:32 (June 2016 Update).[13]

---

[13] In addition, there is nothing in the record to indicate that Roy was a party to, or received, any privileged attorney-client communications in this matter. Although the Homicks assert in their supplemental brief that they objected to the subpoena duces tecum served on Fire and Explosion Consultation on the grounds that it sought information "subject to the attorney-client privilege and work product privileges," in the

{¶ 56} With respect to the Homicks' claim of work product protection, although the Homicks need only make a colorable claim that the work product doctrine or consulting expert privilege applies to Roy's testimony, the record here is insufficiently developed to show that Roy's deposition would result in the disclosure of any privileged or protected information. It is clear that Roy was initially "identif[ied]" by the Homicks as "a person whom the [Homicks] expect[ed] to call as an expert witness at trial." Former Civ.R. 26(B)(5)(b). In their supplemental answers to DMS' interrogatories, the Homicks stated: "Adam Roy of Fire and Explosion Consultants, LLC will testify as to the cause and origin of the fire."[14] Even assuming the Homicks were entitled to withdraw their identification of Roy as a testifying expert and redesignate him as a nontestifying, consulting expert (and even assuming they did so when they failed to timely produce an expert report), the Homicks had already agreed, through their initial counsel, to share with DMS "any

_____

written objections they filed in response to the subpoena, the Homicks objected to the subpoena only on the grounds that it was "[o]verly broad, vague, unduly burdensome, protected by attorney work product privilege, and undiscoverable pursuant to Civ.R. 26(B)(5)." No objection was raised to the subpoena based on attorney-client privilege. In their motion for protective order, the Homicks did not set forth any facts to suggest that Roy possesses any information or documents protected from disclosure by the attorney-client privilege. Roy did not address the issue in his affidavit the Homicks submitted in support of their motion for protective order and neither the Homicks nor their counsel submitted an affidavit addressing that issue in support of the motion.

[14] For purposes of determining whether the Homicks have made a "colorable claim" that Roy's testimony is protected from discovery by the work product doctrine or the consulting expert privilege, it is immaterial whether Liberty Mutual (the Homicks' insurer), the Homicks themselves or the Homicks' counsel (who were employees of Liberty Mutual), in fact, retained Roy for purpose of defending the Homicks. And there is no evidence in the record that any of Roy's opinions or conclusions were shared with anyone from Liberty Mutual other than the Homicks' counsel.

evidence developed" during Roy's examination of the evidence and had already disclosed to DMS, in their supplemental responses to DMS' discovery requests, Roy's opinion and conclusion that he had "determined the cause of the fire was not Defendants," intentionally relinquishing any protection afforded by the work product doctrine as to those subjects. *See, e.g., Adamson,* 2020-Ohio-4241, at ¶ 46 (finding appellant's act of "formally identif[ying]" two experts as testifying experts "waived any work-product protection" as to the experts' opinions and that appellee had demonstrated good cause to discover the underlying facts and documents supporting the experts' opinions that appellant did not cause the vehicle accident at issue and was not liable to appellee on her claims). The Homicks have not claimed (much less demonstrated) that Roy has factual information regarding the case beyond the "evidence developed during the inspection" — which they had agreed to provide to DMS — or that Roy developed any other opinions or conclusions relating to this matter beyond the determination that "the cause of the fire was not Defendants," which was previously disclosed to DMS. Further, Roy's determination that "the cause of the fire was not Defendants" was not harmful to, but rather supported, the Homicks' defense.

{¶ 57} We can certainly envision circumstances and situations in which a party could establish that an order allowing the discovery of information claimed to be protected by the work product doctrine or the consulting expert privilege would satisfy the requirements of R.C. 2505.02(B)(4)(b). *See, e.g., In re Special Grand Jury Investigation of Medicaid Fraud & Nursing Homes*, 10th Dist. Franklin No.

18AP-730, 2019-Ohio-2532, ¶ 23-25 (trial court order compelling production of documents in grand jury proceedings over work product objection was immediately appealable where appellants "cogently argue[d]" that "once disclosed, the information in question cannot be neutralized, * * * the state will forever have the use of it in subsequent litigation before the trial court" and "[n]o subsequent appeal * * * could remove this unfair or improper advantage gained"); *Summit Park Apts., L.L.C. v. Great Lakes Reinsurance*, 2016-Ohio-1514, 49 N.E.3d 363, ¶ 11 (10th Dist. 2016) (trial court order to disclose claimed work product was a final, appealable order because appellants had argued in their appellate brief that they would be denied an effective remedy if not permitted immediate review "because the privilege is lost once the documents are exposed to opposing counsel" and "even if use of the documents as evidence were later forbidden or limited, the knowledge of what the documents contained would still be in the minds of counsel for [appellee] and would still potentially affect the way the attorneys litigate the case"). However, the Homicks have not shown why, under the particular facts and circumstances of this case, they would not be afforded a meaningful or effective remedy by an appeal following final judgment of the trial court's order.

{¶ 58} In their reply brief on the merits, the Homicks assert that the trial court's order could result in "irreparable harm to the Homicks" because DMS could "amend[] its Complaint to include new theories of liability." They also assert that it would be "unfair" to allow DMS to "depose Mr. Roy, on Liberty Mutual's dime,

regarding his opinions without spending one penny to retain its own expert." However, the trial court's order does not address those issues.

{¶ 59} The trial court's order only authorized a discovery deposition of Roy. It did not address whether DMS would be permitted to use Roy's testimony or any information obtained from Roy at trial or otherwise in the case. Further, although the Homicks had requested that DMS be required to pay for Roy's attendance at the December 9, 2019 hearing, there is nothing in the record to indicate that Roy or the Homicks requested that DMS be required to pay for Roy's attendance at deposition. Former Civ.R. 26(B)(5)(e) stated:

> The court may require that the party seeking discovery under division (B)(5)(b) of this rule pay the expert a reasonable fee for time spent in responding to discovery, and, with respect to discovery permitted under division (B)(5)(a) of this rule, may require a party to pay another party a fair portion of the fees and expenses incurred by the latter party in obtaining facts and opinions from the expert.

{¶ 60} Following the July 1, 2020 amendments to the Civil Rules, that issue is now addressed by Civ.R. 26(B)(7)(h)(iii), which states: "The party seeking discovery under division (B)(7) of this rule [governing disclosure of expert testimony] shall pay the expert a reasonable fee for time spent in deposition." Accordingly, DMS would not be deposing Roy on "Liberty Mutual's dime." Further, even if the trial court had ordered the Homicks to pay Roy's fee for his deposition, this is not a circumstance with respect to which the Homicks would not be afforded a meaningful or effective remedy by an appeal following final judgment. Any error

by the trial court with respect to that issue could be effectively remedied following final judgment.

{¶ 61} In arguing that the trial court's order constituted a final, appealable order in their supplemental brief on the issue of jurisdiction, the Homicks simply recited the requirements of R.C. 2505.02(B)(4), asserted that the trial court's order met those requirements and stated:

> This constitutes a final, appealable order because a party who is compelled to produce privileged documents, including, but not limited to, attorney-client communications, will be left without an adequate remedy because once production occurs, the bell will have already been rung and the privilege cannot be restored through a later appeal. * * * Simply put, if the party compelled to produce the privileged document is not afforded the right to an immediate appeal, there can be no remedy after trial has concluded or the matter is otherwise resolved because there can be no return to the time when the privileged information was not disclosed to the adversarial party.

The Homicks did not discuss *Burnham* or *Chen.*

{¶ 62} The Homicks' argument in support of jurisdiction, as stated in their supplemental brief, does not match the facts of this case. As stated above, the trial court's order did not compel the production of any documents and did not compel the disclosure of any attorney-client privileged communications. At issue here is the trial court's decision to allow the discovery deposition of Roy to proceed over the Homicks' objections based on the work product doctrine and the consulting expert privilege.

{¶ 63} The Ohio Supreme Court has held that an appellant appealing a discovery order involving the production of information or materials allegedly

protected by the work product doctrine must "affirmatively establish" that the order meets the requirements of R.C. 2505.02(B)(4), including the unavailability of a meaningful remedy by means of appeal from the ultimate final judgment in the matter at issue. *Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, at ¶ 8. Despite our specific request that they do so, the Homicks have not shown that this is such a case. Rather, here, as in *Chen*, the appellants failed to meaningfully "respond to the issue being adjudicated." *Burnham*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, at ¶ 14, citing *Chen* at ¶ 6.

{¶ 64} Where an appellant fails to establish why an immediate appeal is necessary in a particular case, the appellate court must presume an appeal in the ordinary course would be meaningful and effective. *Chen* at ¶ 8. We, therefore, lack jurisdiction over the trial court's discovery order and must dismiss the Homicks' appeal. *Id.* at ¶ 7-8; *see also In re Special Grand Jury Investigation*, 2018-Ohio-760, 107 N.E.3d 793, at ¶ 11-17.

{¶ 65} Appeal dismissed.

It is ordered that appellee recover from appellants the costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR